# CHARLESTON.

DOWNEY, *Admr.* v. KEARNEY *et al.*

Submitted November 20, 1917.   Decided November 27, 1917.

1. EXECUTORS AND ADMINISTRATORS—*Administrator de Bonis Non—Suit.*

   An administrator *de bonis non* can not maintain a suit against the personal representative of a former administrator or executor for a devastavit.   (p. 424).

2. SAME—*Office and Duties—Termination.*

   Where a testator bequeathes all his estate to a certain person for life, and remainder to certain others and names his executors, charging them with no duty to manage or care for the estate during the possession of the life tenant and distribute it to the remaindermen, the office and duties of such executors end when they have paid all the debts, collected all the assets of the estate and turned them over to the life tenant.   (p. 425).

Suit by William W. Downey, administrator d. b. n. c. t. a. of George P. Blessing, deceased, against Cora Kearney and another, executrices of Minerva Blessing, deceased.   Demurrer to bill sustained, and question certified.

*Affirmed.*

*Downey & Henson,* for plaintiff.

*X. Poole* and *H. H. Emmert,* for defendants.

WILLIAMS, JUDGE:

William W. Downey, administrator *d. b. n. c. t. a.* of George P. Blessing, deceased, brought this suit in equity against Cora Kearney and Laura Homrich, executrices of Minerva Blessing, deceased, in the circuit court of Berkeley county, to surcharge and falsify the final settlement of the executorial accounts of Minerva Blessing and John Homrich as joint executrix and executor of the last will of said George P. Blessing.   A demurrer to the bill was sustained, and the question of the right of an administrator *d. b. n.* to maintain such a suit against the personal representative of a former executor or administrator is certified to this court for its determination.

George P. Blessing died in 1900, leaving a will whereby, after providing for the payment of his debts and funeral expenses, he made the following devise to his wife:

"Item Second: It is my will and desire that my wife Minerva Blessing shall have all of my estate both real and personal so long as she may live or remain my widow, and to use only the rents or the interest of the same for her support and maintenance except for some unforeseen extremity."

He then made the following disposition of the estate in remainder, after the death of his wife, viz: He gave pecuniary legacies to certain named individuals and to certain benevolent societies and organizations, and authorized his wife during her lifetime, if she should see fit to do so, to pay off and discharge any or all of them, and devised all the residue of his estate in remainder to his nephews and nieces, children of his sisters, and named five of his nephews to attend to the proper distribution of his estate among the legatees who were to take the estate upon the death of his wife, and appointed his said wife and his brother-in-law John Homrich as his executrix and executor, with the request that they be permitted to qualify by giving bond without security. They did qualify and caused the property of the estate to be appraised. The appraisement was made on the 25th of July, 1900, and a copy of it is exhibited with the bill showing the value of the real estate to be $6,300, and the value of the personal property, $39,955.16. On the 12th of November, 1901, the executrix and executor made a settlement of their accounts with the estate with a commissioner of accounts for the county court, a copy of which is also exhibited with the bill, and from which it appears that, after payment of funeral expenses, costs of administration and debts due from the estate, there remained $33,166.06 of the personal property. This was turned over to the widow and her receipt taken therefor.

The bill avers that John Homrich died leaving the widow as the sole surviving executrix, and that she died in January, 1917, leaving a will by which she appointed the defendants her executrices and that they qualified as such. It charges that the alleged settlement is false and fraudulent, in that it

shows there was turned over to the widow only $33,166.06, whereas the property turned over to her was very much more in value than that sum; that the assets of testator's estate consisted largely of stocks and bonds and other securities which were turned over to the widow in kind, at their appraised valuation which was very much below their actual worth.

The suit is for a devastavit and under the law of this State can not be maintained by an administrator *de bonis non.* The settlement shows a completed administration, but whether rightfully or wrongfully made we do not say, as it is not essential to decide that question to test the right of plaintiff to maintain the suit. An administrator *de bonis non* can sue only for the unadministered property belonging to the estate. He can not sue for property which has been administered or wrongfully converted to his own use by his predecessor. The settlement purports to be the final act of the executorship of said Minerva Blessing and John Homrich, and passed the title of the property from them to the life tenant. The will does not direct the property to be sold and the money turned over to the widow. All the debts having been paid there was no occasion to convert the property into money. The widow being entitled for life, or during widowhood, to all the property that remained after payment of debts, had a right to take and hold the property in kind, and to continue the securities in the form in which they then were, if she so desired. No one else had a right to it during her life and widowhood.

Whatever may be the law in other jurisdictions, it is the settled rule in this State and in Virginia that an administrator *de bonis non* can not maintain a suit against the personal representative of a former executor or administrator for a devastavit. Whether he could or not seemed for many years to be a doubtful question in Virginia, as shown in *Coke* v. *Harrison,* 3 Rand. 494, decided in October, 1825, wherein the question was raised but not decided in the opinion delivered by Judge Coalter. But the question came up squarely two years later in *Cole, Admr.* v. *M'Murdo et al.,* 5 Rand. 51, and was ably and elaborately discussed in separate opinions delivered by Judges Carr, Green and Coalter,

all of whom arrived at the same conclusion, namely, that an administrator *de bonis non* could not maintain a suit against the personal representative of a former administrator or executor, either at law or in equity, where the assets had been converted or wasted. That is the leading case, and has since been uniformly followed both in Virginia and in this State. No statute has been enacted, since that decision, which affects the rule thereby determined. The following cases and many others that could be cited approve the rule: *Cheatham, Admr.* v. *Burfoot,* 9 Leigh 580; *McCreery* v. *Bank,* 55 W. Va. 663; *Brown* v. *Brown,* 72 W. Va. 648. See also 3 Min. Inst. 571-2.

*Miller* v. *Neff,* 33 W. Va. 197, and other cases cited by counsel for plaintiff recognize the rule announced in *Cole, Admr.* v. *M'Murdo, supra,* and are not in conflict with it. In *Miller* v. *Neff,* there had been a decree pronounced against the administrator in his representative capacity, to be paid out of assets in his hands to be administered, and it was held that, upon his death, the administrator *de bonis non* and not the administrator of the deceased administrator, had the right of appeal from that decree to this court. But the decision would unquestionably have been otherwise, if the decree had been against him personally on account of assets wrongfully converted. Judge SNYDER, in the opinion delivered in that case, says it was equivalent to a decree for assets unconverted, and such assets always pass to the administrator *de bonis non.* In the present case, all the assets belonging to the estate of the testator were administered by being turned over to the life tenant, and there is nothing left to be administered. A judgment either for or against an administrator, in his representative capacity, is for or against the estate, and, if in favor of the administrator, does not amount to a conversion until the judgment is satisfied, and if it is against him is to be paid out of the assets unadministered.

Counsel for plaintiff insists that the administration could not have been completed until the death of the life tenant and possession of the property delivered to the remaindermen. No authority is cited to sustain this proposition, and we have been unable to find any, except in cases where the will ex-

pressly or impliedly creates a trust in the executor which continues during the life estate. In the present case the will provides only for the payment of funeral expenses and debts, before the widow is entitled to receive all the remaining property to hold for life; not even the specific legacies are required first to be paid by the executors. The will authorizes her to pay them during her life, if she sees fit to do so, and if she does not the duty of paying them out of the assets of the estate and distributing the residue to the remaindermen is entrusted by the will to certain other persons, not the aforesaid executors. In such case there can be no implied trust in the executors to make distribution among the remaindermen. The office of the executors was ended and the administration of the estate completed when they paid the debts and turned the remaining property over to the life tenant. The bill does not aver that the widow failed to pay the specific legacies in her lifetime, but her failure to pay them would not confer a right upon the administrator *de bonis non* to maintain this suit. The will not having made it the duty of the executors to pay the pecuniary legacies, it does not become the duty of an administrator *de bonis non* to do so. The duties devolving upon him are only such as should have been performed by the executors, but were not performed either properly or improperly. The bill and exhibits filed therewith show that the debts of the estate were paid and all the remaining assets of the estate turned over to the life tenant by the executors. That completed the administration and terminated their executorship, for delivery to the life tenant passed all title and control of the assets from them. *Weeks v. Jewett,* 45 N. H. 540; *Hunter, Exor.* v. *Green,* 22 Ala. 329; *Bales, Admr.* v. *Woolfolk,* 5 Ga. 329; *Andrews* v. *Brumfield,* 32 Miss. 107; *Straub's Appeal,* 1 Pa. St. 86; *Lark* v. *Linstead,* 2 Md. 420; *Lynde* v. *Estabrook,* 7 Allen 68; *Howland* v. *Howland,* 100 Mass. 222; and *Bill* v. *Kinaston,* 2 Atk. 82, 26 Eng. Rep. 450.

The decree sustaining the demurrer will be affirmed and the cause remanded for further proceedings.

*Affirmed.*