HULBURD *v.* COMMISSIONER OF INTERNAL REVENUE.

No. 39. Argued November 14, 1935.—Decided December 9, 1935.

*Mr. John E. Hughes*, with whom *Mr. Henry A. Gardner* and *Alfred T. Carton* were on the brief, for petitioner.

*Mr. N. A. Townsend,* with whom *Solicitor General Reed, Assistant Attorney General Wideman,* and *Messrs. James W. Morris* and *Maurice J. Mahoney* were on the brief, for respondent.

MR. JUSTICE CARDOZO delivered the opinion of the Court.

The controversy is one as to the liability of the executor and legatee of a shareholder in a dissolved corporation for a deficiency of income and profits taxes assessed against the company.

In September, 1919, the Van Sicklen Company, an Illinois corporation, sold all its assets to a Delaware corporation, the Van Sicklen Speedometer Company, and was thereupon dissolved. In consideration of the sale it received $250,000 in cash and 5,000 shares in the new company, which it distributed forthwith among its own shareholders. One of these shareholders was Charles H. Hulburd. His distributive portion on the dissolution of the company was $8,000 in cash and 160 shares of no-par stock. He died on January 14, 1924, leaving a will by which his son, De Forest Hulburd, and Hugh McBirney Johnston were appointed executors. The son, who is the petitioner in this court, was also a legatee and devisee. The coëxecutor, Johnston, is dead.

In December, 1919, the Van Sicklen Company filed a corporation income and profits tax return for the fiscal year ending September 30, 1919. The return, however, was inadequate. Accordingly, on November 17, 1924, the Commissioner of Internal Revenue made an additional assessment in the sum of $227,872.06, with penalties in the sum of $113,936.03. Unable to collect this deficiency from the company after the distribution of its assets, he turned to the shareholders. On October 27, 1926, he mailed a letter to the " Estate of Charles H.

Hulburd, c/o De Forest Hulburd, 86 East Randolph Street, Chicago, Illinois." In this he gave notice of a proposed assessment "against the estate" by reason of its liability as transferee of the assets of the Illinois corporation. The amount of that liability was stated to be $24,000, but was afterwards reduced to $8,000, the cash received by the testator. In announcing this assessment, the Commissioner acted in reliance on § 280 of the Revenue Act of 1926 (26 U. S. C. App. § 1069), which permits an assessment against the transferee of a taxpayer upon the taxpayer's default. Before the passage of that act shareholders who had received the assets of a dissolved corporation might be compelled to discharge unpaid corporate taxes, but only by bill in equity or action at law. *Phillips* v. *Commissioner*, 283 U. S. 589, 592, 593. A summary procedure was added by the statute. *Phillips* v. *Commissioner, supra*. Upon the default of the taxpayer, the Commissioner is to apportion the deficiency among the transferees of the property and to give notice accordingly. Revenue Act of 1926, § 274. If the transferee is dissatisfied, he may petition the Board of Tax Appeals to redetermine the existence of liability and its proper distribution.

On October 27, 1926, when notice of the proposed assessment was sent to the petitioner, the estate of Charles H. Hulburd had been settled, the assets distributed and the executors discharged.[1] The discharged executors sub-

---

[1] The decree of the Probate Court of Cook County, Illinois, the place of administration, was made on February 26, 1925, and, the text being important, is quoted in full:

"IN THE MATTER OF THE ESTATE OF CHARLES H. HULBURD, DECEASED.

"This day came Hugh McBirney Johnston and DeForest Hulburd, executors of the last will and testament of Charles H. Hulburd, deceased, and presented to the court and filed herein their final account

mitted to the Board of Tax Appeals a petition for review disclaiming liability. They stated in effect that they were the persons who had been appointed executors by the will of Charles H. Hulburd, but that their responsibilities as such were ended. Enumerating their objections to the assessment they alleged that the action of the Commissioner was erroneous for the reason that the estate had been " wholly distributed and settled and your petitioners duly discharged as executors thereof." Thus, as early as December, 1926 (when the petition for review was filed) and before the period of limitation under the statute had run against a new assessment against legatees or devisees (Revenue Act of 1926, § 280 (b) (2)), the Commissioner was put upon notice that the deficiency had been assessed against persons no longer liable and was given the opportunity to impose it upon others. Instead of doing this he stood his ground and prayed for an order that his determination be confirmed.

The Board of Tax Appeals held that " at the time the notice was mailed there was no liability of the estate or of the petitioners as executors." It put aside the consideration of a possible " liability of any of the beneficiaries

---

with the estate of said decedent, showing that said estate has been fully administered.

"And it now appearing to the court that more than one year has elapsed since the granting of letters testamentary herein; that due notice has been given to all of the heirs at law, legatees and beneficiaries; that all assets of said estate have been collected; that no claims have been filed against said estate; that specific legacies have been paid; that the inheritance tax, federal estate tax, income tax, court costs and all other costs and expenses of administration herein have been paid, and that the balance of said estate has been distributed according to the last will and testament of said decedent, and guardian ad litem consenting to the approval of said final account.

" It is therefore ordered by the court that said final account be approved and recorded, that the estate be and it is declared settled and that the executors be and they are hereby discharged."

under the will or the distributees of the assets of the estate" on the ground that no such question was in the case. 27 B. T. A. 1123; cf. 21 B. T. A. 23. The decision of the Board was reviewed by the Circuit Court of Appeals for the Seventh Circuit. That court decided that the executors were liable *de bonis testatoris* because they had failed to give notice to the Commissioner that their fiduciary capacity had terminated. Revenue Act of 1926, § 281 (b). Besides this, the court held that De Forest Hulburd was liable individually to the extent of $4,000 because in the record there was evidence, not confirmed by any finding, that as legatee under the will he had received half of the $8,000 paid to his father on the dissolution of the company. The order of the Board was accordingly reversed, and the cause remanded for proceedings to conform to the opinion. 76 F. (2d) 736. The power was thus assumed to change a deficiency assessed against the executors of an estate into a deficiency to be assessed against a legatee who had shared in the estate. To determine the validity of that assumption and to settle other questions of statutory construction, a writ of certiorari was granted by this court.

*First:* The petitioner is not chargeable in this proceeding with liability as legatee under the will of a deceased shareholder in the taxpayer, a corporation now dissolved.

The Act of 1926 (c. 27, 44 Stat. 9, § 280; 26 U. S. C. App. § 1069), in supplementing by a summary procedure the cumbrous remedy of suit, laid the duty of assessment upon the Commissioner of Internal Revenue. "The liability, at law or in equity, of a transferee of property of a taxpayer" was to be "assessed, collected, and paid in the same manner and subject to the same provisions and limitations" as in the case of any other tax deficiency. *Ibid.* § 280 (a) (1). Pursuant to this mandate the Commissioner did assess a liability and gave notice to the transferee accordingly. He assessed it to the estate rep-

resented by executors, and not to any one else. "As provided by Section 280 of the Revenue Act of 1926, there is proposed for assessment against the estate the sum of $24,000 constituting its liability as a transferee of the assets of the Van Sicklen Company, Elgin, Illinois." The Board of Tax Appeals upon petition for review had power to redetermine the deficiency thus charged to the estate (Revenue Act of 1926, § 274), but not to charge it to another. Cf. 26 U. S. C. (1934 ed.) §§ 600, 601, 619; *Williamsport Wire Rope Co.* v. *United States,* 277 U. S. 551, 562, 564. If some one else was to be charged, there would be need of a new assessment, which the Commissioner might make at any time within a year after the enactment of the statute. Revenue Act of 1926, § 280 (b) (2). In making it he would consider any facts material and relevant for arriving at a just apportionment of benefits and burdens. The duty to inquire and determine was imposed by the statute upon him and not upon an agency of government established for the purpose of revising his decision. These restraints upon jurisdiction were duly heeded by the Board. It disclaimed the power or the purpose to pass upon the liability of legatees or devisees or to assess a tax against them. The same restraints upon jurisdiction were binding upon the Court of Appeals in reviewing the action of the Board, and binding with greater emphasis, for the court was without power to choose between conflicting inferences unless only one was possible, or to try the case *de novo. Helvering* v. *Rankin,* 295 U. S. 123. The adjudication of liability as to Hulburd individually was made in seeming forgetfulness of these jurisdictional restrictions. It was error to ignore them.

In so holding we are not unmindful of the argument for the respondent that the form of the petition to review the action of the Commissioner was effective in some way to enlarge the scope of the proceeding and to subject the

legatee to a new and different assessment. The argument will not stand. There is nothing in the petition submitted to the Board whereby power was extended beyond the statutory limits, if we assume provisionally that consent might be effective, at least in certain circumstances, to bring that result about. The petitioners, having been discharged as executors, were unwilling to describe themselves as if they were still acting in that capacity. What they did was to state the facts and ask the judgment of the Board thereon. Far from conceding that the assessment ran against either of them personally, they protested that in form and in purpose it was an assessment against the estate and hence was of no validity after the estate had been settled and the executors discharged. The meaning of their protest was not subject to misconstruction, nor in fact was it misconstrued, as the opinion of the Board shows, if the fact might otherwise be doubtful. When the protest had been made, the remedy available to the Commissioner was obvious and ample. He had time even then as we have already pointed out, to announce a new assessment, which would have brought up the question whether the liability once resting on the executors had devolved upon another. For reasons not disclosed he determined not to do so. In such circumstances the cases cited by the government, where a formal defect has been ignored in circumstances tending toward an inference of waiver or estoppel,[2] have no relation to the case at hand. We are not required at

[2] *Commissioner* v. *New York Trust Co.*, 54 F. (2d) 463; *Haag* v. *Commissioner*, 59 F. (2d) 516; *Burnet* v. *San Joaquin Fruit & Investment Co.*, 52 F. (2d) 123; *Warner Collieries Co.* v. *United States*, 63 F. (2d) 34; *American Equitable Assurance Co.* v. *Helvering*, 68 F. (2d) 46; *Continental Products Co.* v. *Commissioner*, 66 F. (2d) 434; *Buzard* v. *Helvering*, 64 App. D. C. 268; 77 F. (2d) 391; *Commissioner* v. *Nichols & Cox Lumber Co.*, 65 F. (2d) 1009; *Pittsburgh Terminal Coal Corp.* v. *Heiner*, 56 F. (2d) 1072.

this time to approve or disapprove them. In this case there was neither waiver nor estoppel, but a steady insistence that the deficiency had been assessed against the estate and no one else, and that the liability of the estate had ended. To hold that by consent, either tacit or express, the proceeding had been turned into one to review the validity of a different assessment, and one never in fact made, would be a perversion of the record.

*Second:* The estate having been settled and the executors discharged, the petitioner was *functus officio* under the law of Illinois, and was no longer subject to an assessment in his representative capacity.

The Court of Appeals in upholding the liability of the executors as such put its ruling upon the ground that they had failed to give notice to the Commissioner of the termination by decree or otherwise of their fiduciary capacity. The notice was thought to be requisite under § 281 (b) of the Revenue Act of 1926, which is quoted in the margin.[3] But the Revenue Act of 1926 became a law in February of that year (§ 286; 26 U. S. C. § 931), and the executors were discharged in February, 1925. If their liability as executors was ended at that time, the statute will not be read as attempting to revive it. *White* v. *United States,* 191 U. S. 545; *Winfree* v. *Northern Pacific Ry. Co.,* 227 U. S. 296; *Union Pacific R. Co.* v. *Laramie Stock Yards,* 231 U. S. 190, 199; *Shwab* v. *Doyle,* 258 U. S. 529; *Liberman's Committee* v. *Commissioner,* 54 F. (2d) 527.

---

[3] "Upon notice to the Commissioner that any person is acting in a fiduciary capacity for a person subject to the liability specified in section 280, the fiduciary shall assume, on behalf of such person, the powers, rights, duties, and privileges of such person under such section (except that the liability shall be collected from the estate of such person), until notice is given that the fiduciary capacity has terminated."

Section 281 (b) being found to be inapplicable, we have still to determine whether executors who have been discharged after a full settlement of the estate are subject by the law of Illinois to assessment or suit in their representative capacity.

By the common law of England an executor was deemed to carry forward the *persona* of the testator. Holmes, The Common Law, pp. 344, 345; Holdsworth's History of English Law, vol. 3, pp. 563, 573, 574, 583; Littleton's Tenures, § 337; Co. Litt. 209, a, b; *Mechanics' Savings Bank* v. *Waite,* 150 Mass. 234, 235; 22 N. E. 915; *Chipman* v. *Manufacturers' National Bank,* 156 Mass. 147, 149; 30 N. E. 610. Unless the appointment was qualified in respect of time, it continued during life. Williams, Executors, 12th ed., vol. 1, pp. 131, 147, 342. There was no such thing as a discharge upon a showing of *plene administravit.* There was no such thing as a resignation because of mere unwillingness to go on. *Rogers* v. *Frank,* 1 Younge and Jervis 409, 414; *In the Goods of Heslop,* 1 Robertson's Ecclesiastical Rep. 457, 458; *In the Goods of Veiga,* 3 Swabey & Tristram 13, 15. The power to act might be suspended or revoked through the appointment of a committee or a receiver if the executor was found to be physically or mentally incapable. *In the Goods of Binckes,* 1 Curteis 286; *In the Goods of Newton,* 3 Curteis 428; *In the Goods of Cooke,* [1895] P. D. 68; *In the Goods of Goldschmidt,* 78 L. T. (N. S.) 763; *In the Estate of Shaw,* [1905] P. D. 92. There might be like relief if he had become insolvent after probate or had disappeared or had misappropriated the assets or otherwise abused his trust. *In the Goods of Covell,* [1889] 15 P. D. 8; *Estate of Thomas,* [1912] P. D. 177; *Utterson* v. *Mair,* 2 Ves. Jr. 95, 97, 98; *In the Goods of Loveday,* [1900] P. D. 154, 156; *Oldfield* v. *Cobbett,* 4 L. J. (N. S.) (Chan.) 271, 272; *Richards* v. *Perkins,* 8 L. J. (N. S.) (Ex. Eq.) 57, 58.

Nothing short of clear necessity would cause him to be ousted. In the absence of peril to the estate, responsibility and power were not to be renounced when once they had been assumed. So the law of England continues even now.[4]

The common-law rule is preserved in some of our states today, but in many has been abandoned, at times as the result of statute, at times through the combined force of statute and decision. The diversity of doctrine is surprising, and so, often, is its obscurity. The commentators tell us, however, and, as the cases show, correctly, that the growing tendency in this country is away from the English rule.[5] Some states, though they make provision for an accounting, make none for a discharge, and hold the executor suable after the estate has been distributed, upon the chance that other property may be discovered later on. The judgment will be collectible out of assets *in futuro*, or *quando acciderint*, as was said in early days. Williams, *supra*, vol. 2, p. 1253; *Mary Shipley's Case*, 4 Coke, Part 8, p. 408; *Noell* v. *Nelson*, 2 Saund. 226. This in effect is the practice in New York (*Mahoney* v. *Bernhard*, 45 App. Div. 499, 501; 63 N. Y. S. 642; aff'd, 169 N. Y. 589; 62 N. E. 1097; *Willets* v. *Haines*, 96 App. Div. 5, 7; 88 N. Y. S. 1018; *Rosen* v. *Ward*, 96 App. Div. 262, 266; 89 N. Y. S. 148; *Pearse* v. *National Lead Co.*, 162 App. Div. 766, 769; 147 N. Y. S. 989; *Paff* v. *Kinney*, 1 Bradf. 1, 9), where a judicial settlement of accounts is conclusive as to the past, but is never ultimate in the sense that it relieves the fiduciary from liability for the future. See also *Hazlett* v. *Estate of*

---

[4] Cf. 14 Halsbury, Laws of England, 2d ed., pp. 171, 269, 287, 288, and cases cited.

[5] See Woerner, The American Law of Administration, 3d ed., vol. 3, §§ 571, 572, 573, where the cases are brought together.

*Blakely,* 70 Neb. 613, 617; 97 N. W. 808; *Weyer* v. *Watt,*
48 Ohio St. 545, 551; 28 N. E. 670. On the other hand,
there are states where by express provision of the statutes
the executor is to be discharged upon a showing of full
administration, and others where the requirement of a
discharge has been read into the statutes by a process of
construction.[6]

The courts of Illinois, as we interpret their opinions,
maintain a middle ground, which is neither that of the
common law on the one side nor its opposite on the other.
This is not to say that there is any case in that state so
like in its essential features to the one for decision here
as to make the Illinois position certain. On the contrary,

[6] Minnesota: *Security Trust Co.* v. *Black River National Bank,* 187
U. S. 211, 234, reviewing the state decisions; *State ex rel. Matteson* v.
*Probate Court,* 84 Minn. 289, 293; 87 N. W. 783 (Since 1903 the right
to a discharge has been reinforced by statute. Acts of 1903, c. 195;
1 Mason's Stats., 1927, § 8886.); Missouri: *Grayson* v. *Weddle,* 63
Mo. 523, 539, 540; *State ex rel. Stotts* v. *Kenrick,* 159 Mo. 631; 60
S. W. 1063; *In re Estate of Rooney,* 163 Mo. App. 389, 394; 143 S. W.
888; cf. Kentucky: *U. S. Fidelity & Guaranty Co.* v. *Martin,* 143
Ky. 241, 242, 243; 136 S. W. 200; West Virginia: *Downey* v. *Kear-
ney,* 81 W. Va. 422, 426; 94 S. E. 509. See also, Alabama: *Modawell*
v. *Holmes,* 40 Ala. 391, 404; *Hicky* v. *Stallworth,* 143 Ala. 535, 540;
39 So. 267; Code, 1928, § 5962; California: *Willis* v. *Farley,* 24 Cal.
490, 502; *In re Clary,* 112 Cal. 292, 294; 44 Pac. 569; Probate Code,
1933, § 1066; Georgia: *Carter* v. *Anderson,* 4 Ga. 516; *Groce* v.
*Field,* 13 Ga. 24, 30; Code, 1933, § 113–2302; Iowa: *Diehl* v. *Miller,*
56 Iowa 313; 9 N. W. 240; Code, 1931, § 12052; Kansas: *Musick* v.
*Beebe,* 17 Kan. 47, 53, 54; *Proctor* v. *Dicklow,* 57 Kan. 119, 125;
Rev. Stats., 1923, § 22–931; Montana: *State ex rel. Petters & Co.* v.
*District Court,* 76 Mont. 143, 148; 245 Pac. 529; Rev. Code, 1921,
§§ 10311, 10331; Pennsylvania: *Vandever's Appeal,* 42 Pa. 74; *Es-
tate of John Wiseman,* 12 Phila. 11; 20 Purdon's Stats., § 911; South
Carolina: *Seabury* v. *Green,* 294 U. S. 165, 169; *Quick* v. *Campbell,*
44 S. C. 386, 392; 22 S. E. 479; *McNair* v. *Howle,* 123 S. C. 252, 266;
116 S. E. 279; Code, 1932, § 9024.

support will be found for the strict rule of the common law if what has been said in some of the opinions is taken from its framework and considered without reference to what was actually decided. See, e. g., *Starr* v. *Willoughby*, 218 Ill. 485, 493; 75 N. E. 1029. The aspect becomes different, however, when attention is directed to the setting of the facts and to the provisions and implications of the applicable statutes. What emerges, it would seem, is this: A discharge upon an accounting will be vacated in a direct proceeding if it appears that there were assets, not inventoried by the executor nor included in his report, for which, when the decree was passed, he was properly accountable (*Fraser* v. *Fraser*, 149 Ill. App. 186, 187, 195, 196; cf. *Musick* v. *Beebe*, 17 Kan. 47, 53, 54): in the absence of such a showing, the discharge when decreed upon a finding of full administration will relieve the executor for the future of responsibility and power. Cf. *Reizer* v. *Mertz*, 223 Ill. 555, 562, 564; 79 N. E. 283; *Robinson* v. *Robinson*, 214 Ill. App. 262, 268, 269.[7]

---

[7] Leading cases in Illinois are brought together in this note for the purpose of distinguishing dictum from decision: *Blanchard* v. *Williamson*, 70 Ill. 647, 650, holds that a discharge of an administrator will be treated as a nullity if made while the estate is in course of administration; *Diversey* v. *Johnson*, 93 Ill. 547, 558, holds that a discharge is of no effect if obtained by the administrator with notice of an outstanding claim and in fraud of the rights of the adverse claimant (cf. *People* v. *Rardin*, 171 Ill. App. 226, 230); *Bayless* v. *People*, 56 Ill. App. 55, 58, holds that a surety is liable on an executor's bond where a balance available for creditors was wrongfully distributed; *Starr* v. *Willoughby*, 218 Ill. 485, 492; 75 N. E. 1029, holds that a power in trust, unrelated to the office of executor, will survive a decree which purports to discharge him; and *Maguire* v. *City of Macomb*, 293 Ill. 441, 453; 127 N. E. 682, is substantially to the same effect. No case has been found where an executor whose discharge had been decreed after a full and fair accounting has been held suable thereafter in his representative capacity.

Whatever doubt may survive a reading of the cases is dispelled or greatly attenuated when we pass to an examination of the statutes and the plan that they reveal.

First in order of importance is the statute regulating the settlement of accounts.[8] An executor is required to exhibit a report of his administration within thirty days after the expiration of one year from the date of his letters. That being done, he must exhibit a report thereafter, whenever required by the court, " until the duties of administration are fully completed." He may from time to time at his own volition file " a final report of his administration to a specified date," which, even if approved, will not terminate his office. He may also make a final report " at the conclusion of administration." [9] Such a report, if approved upon notice to all parties in interest, shall be binding upon them " in the absence of fraud, accident or mistake." A final report " at the conclusion of administration " assumes that there is a stage when administration is over. The executor is *functus officio* when discharged by the court after that stage has been attained.

Another statute of high significance is one that makes provision for an appraisal of the assets.[10] If the executor discovers after the making of an inventory and appraisal that the assets of the estate do not exceed the amount of the widow's allowance, after deducting necessary expenses, he is to report the facts to the court. Thereupon the court, if it finds the report to be true, shall order the assets to be delivered to the widow, " and discharge the executor

---

[8] Laws of 1872, p. 77, at pp. 105, 106, § 112; amended by Laws of 1919, p. 1, at p. 3; Laws of 1931, p. 6; Laws of 1933, p. 3, at p. 6; now Revised Statutes, 1935, c. 3, § 114.

[9] See Laws of 1931, p. 6.

[10] Laws of 1872, p. 77, at p. 92, § 59; Laws of 1919, p. 1, at p. 2; now Revised Statutes, 1935, c. 3, § 60.

or administrator from further duty." Plainly such a discharge is equivalent to a termination of the office. There is not only exoneration for the past, but absolution for the future.[11]

The decree of the Probate Court discharging this executor must be read against the background of this statutory scheme. It is too precise in its terms to be dismissed as amounting to nothing more than a confirmation of the report as submitted for approval. If words can express an intention to declare administration ended, the expression is not lacking here. We may not put all this aside as surplusage. If there was no power in the Illinois court to give relief so comprehensive, the defect should be very clear before a federal court will undertake to wrest the words of the decree from their natural and ordinary meaning or hold them to be futile. Especially is that so in view of the growing tendency of probate courts throughout the land to break the shackles of the ancient rule. Weighty considerations of expediency and justice explain this tendency and support it. In the thought of many judges, an executor discharged after a full and fair accounting is no longer to be vexed by the annoyance and expense of defending fruitless suits with assets no longer available for reimbursement or indemnity. If suitors or tax-gatherers wish to go against the estate or against those who have shared in it, they must either vacate the decree upon a showing of assets unaccounted for, or procure upon a showing of necessity the appointment of an administrator, or pass over the estate and its representatives and pursue the legatees to the extent of benefits received. There was no attempt to tread those paths, though the last at all events was open.

---

[11] Still another inroad upon the common-law rule is made by a statute allowing an executor to resign whenever it appears to the court that a resignation is proper. Laws of 1872, p. 77, at p. 88, § 40; now Revised Statutes, 1935, c. 3, § 41.

The controversy in this aspect is one of local law, which, once it is ascertained, must be accepted as controlling. *Security Trust Co.* v. *Black River National Bank, supra; Forrest* v. *Jack,* 294 U. S. 158; *Seabury* v. *Green,* 294 U. S. 165. The decree discharging the executors amounts to a construction of the Illinois statute by a court of the state, and a court of special competence and experience in disposing of such questions. There being no satisfactory showing that the decision overpasses the bounds of jurisdiction, we yield to its authority.

The decree of the Circuit Court of Appeals is reversed and the order of the Board of Tax Appeals affirmed.

*Reversed.*