## UNITED STATES v. FIRST HUNTINGTON NAT. BANK.

### Civ. No. 5.

District Court, S. D. West Virginia.
July 20, 1940.

Lemuel R. Via, U. S. Atty., and John W.
Hereford, Asst. U. S. Atty., both of Hun-

tington, W. Va. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and F. A. Michels, Sp. Assts. to Atty. Gen., on the brief), for plaintiff.

Walter L. Brown, Jackson N. Huddleston, and Fitzpatrick, Brown & Davis, all of Huntington, W. Va., for defendant.

HARRY E. WATKINS, District Judge.

This is an action by the United States seeking to hold an administrator personally liable for an estate tax under Sec. 3467, R. S., 31 U.S.C.A. § 192. Both plaintiff and defendant have moved for summary judgment under Rule 56 of the Rules of Federal Procedure, 28 U.S.C.A. following section 723c. The principal question presented here is whether the action is barred by limitations.

The complaint, amended complaint, answer and admissions made on the record, disclose the following undisputed facts: D. T. Evans, of Huntington, W. Va., died intestate on August 13, 1925, and the First Huntington National Bank, defendant, qualified as administrator of his estate on October 7. On August 12, 1926, such administrator filed a federal estate tax return upon which a net estate tax was computed and paid. On or about November 23, 1926, such administrator received notice in writing from the internal revenue agent in charge at Huntington that certain changes in the return were proposed which would result in an increase in the net tax payable, unless protest was filed within thirty days. Such protest was duly filed by the administrator.

Despite such notice of proposed deficiency in estate tax, the administrator, thereafter, during 1927, but prior to October 26, 1927, distributed all of the assets of the estate, of the value of $150,000, to Charlotte T. Evans, widow of decedent. On October 26, 1927, the administrator made a final settlement of its accounts with the County Court of Cabell County, which settlement was approved and confirmed. The proposed deficiency assessment was not included in such settlement. The Commissioner of Internal Revenue on October 29, 1928, determined that a deficiency tax of $12,864.-80 existed against such estate and on that day notified the defendant administrator of such deficiency. On December 22, 1928, the defendant, as administrator, filed a verified petition with the Board of Tax Appeals for redetermination of the tax, setting forth therein, among other things, that

said determination of the commissioner was erroneous for the reason that certain shares of corporate stock were improperly included in ascertaining the value of such estate, and that values were excessive. On or about January 26, 1932, the defendant, as administrator, filed an amended petition with the Board of Tax Appeals, which set forth substantially the same grounds contained in the original petition. On or about March 24, 1932, the Commissioner of Internal Revenue was notified that the defendant had been previously discharged as administrator of such estate.

In the appeal before the Board of Tax Appeals the following agreement was signed:

"It is hereby stipulated and agreed, by and between the parties to the above entitled appeal, by their respective attorneys, that there is a deficiency in estate tax due from the estate of the above-named decedent in the sum of $4,663.85 * * *.

"It is further stipulated and agreed that the Board may enter an order so determining the deficiency without notice to either party.

"It is agreed that the deficiency may be assessed and collected immediately after the issuance of the Board's order of redetermination without regard to the restrictions, if any, contained in the Revenue Acts of 1926, 1928, and 1932."

This stipulation was signed by counsel for both the defendant as administrator and the Bureau of Internal Revenue, is dated November 22, 1932, and was filed with the Board of Tax Appeals on December 2, 1932. On December 8 the Board of Tax Appeals ordered a deficiency in estate tax in the amount agreed upon by the parties to the appeal and on January 5, 1933, the commissioner assessed said deficiency of $4,663.85, and interest of $1,790.15, or a total of $6,454.00. No part of this assessment has been paid. No other assessment was made. This action was instituted January 3, 1939, to hold the bank personally liable for such tax.

The substance of pertinent statutes involved are: An estate tax is imposed upon the transfer of the net estate of every decedent. Sec. 301 (a) of Revenue Act of 1924, 26 U.S.C.A. Int.Rev.Acts, page 65. An administrator who distributes an estate without payment of federal estate taxes becomes personally liable to the extent of value of assets distributed. Sec. 3467, R.S.,

U.S.C.A. Title 31, § 192. If the commissioner determines a deficiency in respect of estate tax, the executor shall be notified of such deficiency, and within 60 days after such notice is mailed the executor may file an appeal with the Board of Tax Appeals. Sec. 308 (a), Revenue Act 1924, 26 U.S.C.A. Int.Rev.Acts, page 72. Except as provided in Sec. 311, the amount of the estate taxes imposed by Sec. 301 (a) shall be assessed within four years after the return was filed. Sec. 310 (a), Revenue Act 1924, 26 U.S.C.A. Int.Rev.Acts, page 74. The period within which such assessment is required to be made in respect of any deficiency shall be extended, if an appeal has been filed, by the number of days between the date of the mailing of . such notice and the final decision of the board. Sec. 310 (b), Revenue Act 1924.

"Where the assessment of any tax imposed by this title or of any estate or gift tax imposed by prior Act of Congress has been made (whether before or after the enactment of this Act) within the statutory period of limitation properly applicable thereto, such tax may be collected by distraint or by a proceeding in court (begun before or after the enactment of this Act), but only if begun (1) within six years after the assessment of the tax * * *." Sec 311(b), Revenue Act 1926. U.S.C.A. Int.Rev.Acts, Title 26, page 249.

The liability of a fiduciary under Sec. 3467, R.S., shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax (including the provisions authorizing proceedings in court for collection). Any such liability may be either as to the amount of tax shown on the return or as to any deficiency in tax. The period of limitation for assessment of any such liability of a fiduciary shall be within one year after expiration of the period of limitation for assessment against the executor. Sec. 316(a) (b), Revenue Act 1926. U.S.C.A. Int.Rev.Acts, Title 26, page 254.

The government contends: (1) An assessment was timely made on January 5, 1933, of a deficiency estate tax under Sec. 301(a) of the Revenue Act of 1924 and, (2) such assessment of tax allowed the commencement of this suit to collect the personal liability of a fiduciary under R.S. § 3467, within six years thereafter (or until January '5, 1939), by virtue of Sec. 311(b), the applicable limitation statute.

The defendant says that such assessment against the estate does not permit suit upon defendant's personal liability for six years thereafter. It says that the additional six years is allowed to sue upon the personal liability of a fiduciary only where the assessment was against the fiduciary personally; that where the assessment is only against the estate, or against the defendant in its fiduciary capacity, the government must sue to collect the personal liability of such fiduciary within the time allowed for making an assessment of the personal liability of the fiduciary; that Sec. 311(b) is not the applicable limitation statute because this is a proceeding to collect a penalty instead of a tax. I cannot agree with defendant's conclusions.

■ It is well to remember at the beginning of this discussion that lapse of time does not bar the government's right to collect a tax unless some statute says so. Tax limitation statutes add nothing to the power of the government to sue but only fix a time limitation upon its right to sue.

■ Prior to the Revenue Act of 1926, there were no statutory provisions governing the manner of collection of personal liability of a fiduciary under R.S. § 3467, or the liability, at law or in equity, of transferees of property of a decedent, or of transferees with respect to income taxes. Such liability was collected by suit, which often proved difficult and expensive. In 1926 Congress provided an alternative summary method of collection by notice to the fiduciary or transferee with opportunity to pay and sue for refund, or to be heard before the Board of Tax Appeals, with right to appeal to the courts. This did not create a new obligation, but merely provided a new remedy for enforcing an existing obligation. Phillips v. Commissioner, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289; Leighton v. United States, 9 Cir., 61 F.2d 530; Rosenberg v. McLaughlin, 9 Cir., 66 F.2d 271, certiorari denied Rosenberg v. Lewis, 290 U.S. 696, 54 S.Ct. 132, 78 L.Ed. 599.

■ The provisions of Sec. 280 of the Revenue Act of 1926, 26 U.S.C.A. Int.Rev. Acts, page 212, providing the new remedy for collection of income taxes, are almost identical to the provisions of Sec. 316 of the same act, 26 U.S.C.A. Int.Rev.Acts, page 254, pertaining to estate taxes. The courts have uniformly held that the new

remedy providing for assessment directly against the fiduciary for personal liability under § 3467, R.S., and providing for assessment against transferee upon his existing liability at law or equity, was not exclusive, but cumulative. The government may still exercise its old remedy of proceeding in court against the fiduciary or transferee without previous assessment against them under Sections 316 and 280, respectively. That is what the government has done in this case. This action is not brought under Section 316 and therefore the limitation provisions of such section are not applicable. The applicable statute is Sec. 311 of the Revenue Act of 1926. Assessment of the tax was made against the estate on January 5, 1933, and this proceeding in court to collect the tax was begun within six years thereafter. While this suit is against the fiduciary personally, it is, nevertheless, a, proceeding in court to collect the identical tax which was previously assessed against the estate, under a prior Act of Congress—Revenue Act of 1924 in effect at death of decedent. Russell v. United States, 278 U.S. 181, 49 S.Ct. 121; 73 L.Ed. 255. The Russell case was a suit against the stockholders of a dissolved corporation as transferees to recover taxes assessed against the corporation. The Supreme Court held that such action was a proceeding for the collection of taxes and was barred by the applicable statute of limitations.

Defendant's contentions are best answered in the leading case of United States v. Updike, 281 U.S. 489, 50 S.Ct. 367, 368, 74 L.Ed. 984. There the government made an assessment against a corporation, but thereafter brought suit against stockholders as transferees to collect corporation income taxes. The question was whether such suit was barred by Sec. 278 of the Revenue Act of 1926, 26, U.S.C.A. Int.Rev.Acts, page 209, which provided as follows: "(d) Where the assessment * * * has been made (whether before or after the enactment of this Act) within the statutory period of limitation properly applicable thereto, such tax may be collected by distraint or by a proceeding in court (begun before or after the enactment of this Act), but only if begun (1) within six years after the assessment of the tax * * * '". This section is almost identical with Sec. 311(b) relating to estate taxes. Section 280(a) relating to income taxes is practically identical with Sec. 316(a)

relating to estate taxes, providing that "except as hereinafter in this section provided", liability of the transferee shall be "assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this title (including * * * the provisions authorizing * * * proceedings in court for collection * * *)".

Suit had not been brought until seven years after assessment.. The government vigorously urged the six-year limitation provision of Sec. 278(d) was not applicable—"That section 278(d) relates only to proceedings to collect taxes qua taxes, and not to suits in equity to recover 'trust funds,' and that the present suit is of the latter character * * *". Overruling this contention, the court said:

"The first point turns upon the question whether this is a proceeding to collect a tax, as to which it is said that the provision of section 278(d) that 'such tax may be collected * * * by a proceeding in court', etc., refers only to a direct proceeding against the taxpayer; and that this view is borne out by a consideration of section 280 (chapter 27, 44 Stat. 9, 61; U.S. Code Supp., Title 26, § 1069 [26 U.S.C.A. Int.Rev.Acts, page 212]), which prescribes a mode of procedure against transferees of the property of a taxpayer. * * *

"It seems plain enough, without stopping to cite authority, that the present suit, though not against the corporation but against its transferees to subject assets in their hands to the payment of the tax. is in every real sense a proceeding in court to collect a tax. The tax imposed upon the corporation is the basis of the liability, whether sought to be enforced directly against the corporation or by suit against its transferees. The aim in the one case, as in the other, is to enforce a tax liability; and the effect of the language above quoted from section 280 is to read into that section, and make applicable to the transferee equally, with the original taxpayer, the provision of section 278(d) in relation to the period of limitation for the collection of a tax. * * * The clear intent of section 278, as applied to the facts of the present case, was to designate the extent of time for the enforcement of the tax liability."

It is urged that the Updike case was subsequently overruled by the Supreme Court in United States v. Continental Bank &

---

Trust Co., 305 U.S. 398, 59 S.Ct. 308, 310, 83 L.Ed. 249. I cannot agree. The Continental case was a suit against a transferee of a transferee of a taxpayer. Assessment against the corporation was made on December 6, 1924, but no suit was started against the transferee within six years thereafter. Instead, an assessment was made against the first transferee in 1931 and upon this assessment suit was started against a second transferee within six years thereafter. The majority opinion held that the second transferee was not a "transferee of property of a taxpayer" within the meaning of 280(a). The majority opinion approves the Updike decision, but distinguishes it from the Continental case in this language: "This is not a suit upon assessment of deficiency against the taxpayer on account of the commissioner's determination as shown in his letter of December 6, 1924. The time for such a suit, six years after assessment, expired long before the commencement of this suit. § 278(d). United States v. Updike, 281 U.S. 489, 494, 50 S.Ct. 367, 368, 74 L.Ed. 984". Thereby the court indicates that suit could have been brought against the first transferee upon the original assessment made December 6, 1924 against the corporation taxpayer, within six years thereafter, and cites Sec. 278(d) and the Updike case as authority. The court bases its decision upon two propositions: (1) That a second transferee is a transferee of a transferee instead of a transferee of a taxpayer and (2) that the assessment sued upon was not made in time.

Defendant says that the reasoning of the Updike case, and subsequent cases following, cannot apply to a proceeding to enforce the personal liability of a fiduciary. It is argued that the Updike case is against a transferee upon the trust fund theory and is therefore a proceeding to collect a tax, whereas a proceeding to collect the personal liability of a fiduciary is one to collect an indemnity. This contention is ingenious, but unsound.

In the transferee cases the liability to pay the tax was created, in the absence of statute, upon the equitable trust fund theory. The personal liability of a fiduciary to pay an estate tax is created by a tax statute. If a suit against a transferee upon a liability created without the aid of a tax statute, is a proceeding to collect a tax, as admitted by defendant, certainly the same is true of a proceeding to collect a liability to pay a tax created by a tax statute. It makes no difference how the liability is created. In either case a tax liability exists, and a suit to collect that liability is obviously a proceeding to collect a tax.

Section 316, enacted first in 1926, limits the period for assessment against fiduciaries, but fails to limit proceedings in court against them. The same Congress enacted Section 316 as enacted Sec. 311 of the Revenue Act of 1926. Limitation on assessments (but not suits) against fiduciaries is covered in Sec. 316; and limitation on suits (but not assessments), against fiduciaries is covered in Section 311(b). The assessment of the tax on January 5, 1933, permitted the plaintiff to sue within six years thereafter to collect the personal liability of the fiduciary. Therefore this action is not barred by the statute of limitations.

Another point urged by the defendant is that the assessment of January 5, 1933, was void (1) because defendant had ceased to be executor on that date and had notified the commissioner of that fact, and (2) because the assessment was made prematurely. It is agreed that a valid assessment of the tax is a necessary condition to the maintenance of this action.

In effect the defendant contends that the Commissioner of Internal Revenue assesses the taxpayer instead of assessing the tax. A similar contention was made in Anderson v. United States, Ct.Cl., 15 F.Supp. 216, in which the taxpayer sued to recover income taxes paid. The Court of Claims said at page 225 of its opinion in 15 F.Supp.: "* * * The contention of plaintiffs is in effect that the Commissioner of Internal Revenue assesses the taxpayer instead of assessing the tax. The assessment contemplated by and referred to in the statute is the assessment by the Commissioner of the tax and the Commissioner's assessment list, which the Commissioner actually signs when he makes an assessment of the tax, does not contain the names of any taxpayers, but contains only the amounts and the total tax as 'additional assessments made by the Commissioner.' * * *"

The certificate appearing on the assessment list of the commissioner in the Anderson case is set out in full in the opinion and is the same as the certificate of the commissioner filed as an exhibit in this case. Likewise the certificate of assessment

which the commissioner signed in this case did not contain the name of any taxpayer but is' listed as "Estate Tax".

The method of assessment is further explained by the Court of Claims in Anderson v. United States, 15 F.Supp. 225, 228, as follows: "* * * The Commissioner assesses the tax, and the amount assessed is a charge against the collector for which he must account. The designation on the supplementary page attached to the Commissioner's assessment list of the person in respect of whose income a tax was assessed or the person from whom collection should be made is for the information and guidance of the collector, and if he proceeds in a proper and legal manner, as he did in this case, no valid objection to the assessment and collection can be made by the person responsible for the payment of the amount assessed and from whom such assessment was collected. * * *"

■ Here there was a "supplemental" page attached to the certificate listing the amount of the tax under the name "The First Huntington National Bank, Adm., Estate of D. T. Evans, Huntington, West Virginia". In my opinion, this amounted only to an assessment of the deficiency taxes of the estate of D. T. Evans and such an assessment was entirely valid.

■ Any doubt as to the validity of such assessment is removed by the agreement signed by the bank as administrator. The tax was computed upon the proper estate; notice and demand for payment was served upon the proper representative of the taxpayer responsible for payment; that representative appealed to the Board of Tax Appeals after it claims to have been discharged as such representative, and upon such appeal agreed to the amount of the deficiency in estate tax and to the immediate assessment thereof without notice. It was held in Sanborn v. Helvering, 8. Cir., 108 F.2d 311, that an appeal properly initiated by executors after their discharge for the redetermination of a proposed deficiency in income taxes against testator's estate, suspended the running of the statute of limitations until that proceeding was finally terminated.

■ For the above reasons the cases of Hulburd v. Commissioner, 296 U.S. 300, 56 S.Ct. 197, 80 L.Ed. 242, and Downey v. Kearney, 81 W. Va. 422, 94 S.E. 509, are not controlling in this case. Furthermore, the Hulburd case was one involving the assessment of an estate as transferee under the alternative remedy of Sec. 280, requiring a specific assessment of the liability of a transferee. This is a proceeding in court to collect under Sec. 311, the only prerequisite being the assessment of the tax, instead of the liability of any particular person as fiduciary or transferee.

■ The assessment was not premature because the stipulation provided that "the deficiency may be assessed and collected immediately". Where the government and the taxpayer, by agreement or acquiescence in the manner of performing an act, have given a definite character and effect to it, the taxpayer will not be permitted, after deriving benefits from such agreement or acquiescence, to deny this character and effect to it, or to change his position at the government's expense. Magee v. United States, 282 U.S. 432, 51 S.Ct. 195, 75 L.Ed. 442; Independent I. & C. Storage Co. v. Commissioner, 5 Cir., '50 F.2d 31; Lucas v. Hunt, 5 Cir., 45 F.2d 781; Stange v. United States, 282 U.S. 270, 271, 51 S.Ct. 145, 75 L.Ed. 335.

■ In this case the government applies Sec. 310(a) of the Revenue Act of 1924, 26 U.S.C.A. Int.Rev.Acts, page 74, providing a four-year limitation period for assessment while the defendant would apply Sec. 310(a) of the Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Acts, page 248, providing a three-year limitation period. The question is not important here. However, I am of opinion that the 1924 act is applicable. The 1926 act expressly provides that the taxes thereby imposed are upon the estate of every decedent "dying after the enactment of this act". Section 301(a), 26 U.S.C.A. Int.Rev.Acts, page 225. The decedent died August 13, 1925, before the enactment of the act.

■ The third defense asserted to this action is that after the assessment was made the defendant notified plaintiff that it had distributed all the assets of the estate to the widow of decedent who was then residing in the State of New York, and that with the exercise of reasonable diligence the plaintiff could have collected the deficiency out of assets of the estate in the hands of the widow, or by the enforcement of the liability of the widow as transferee. The defense of laches or equitable estoppel is not available against the United States in a suit by it to enforce a public right or to protect a public interest.

San Pedro, etc., Co. v. United States, 146 U.S. 120, 13 S.Ct. 94, 36 L.Ed. 911; United States v. Dalles Military Road Co., 140 U.S. 599, 11 S.Ct. 988, 35 L.Ed. 560. Or, as the rule is sometimes expressed, the laches of its officers or agents will not be imputed to the government. Utah Power & Light Co. v. United States, 243 U.S. 389, 37 S.Ct. 387, 61 L.Ed. 791; Gaussen v. United States, 97 U.S. 584, 24 L.Ed. 1009.

In my opinion the complaint states a cause of action upon which relief can be granted.

There being no genuine issue as to any material fact presented by the pleadings, admissions and exhibits, the motion of the defendant for summary judgment is denied and the motion of the plaintiff for summary judgment is granted.