GEORGE S. TOWNE AND JOSEPHINE JOHNSON MILTON, EXECUTORS OF THE WILL OF WILLIAM PIERCE JOHNSON, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JOSEPHINE JOHNSON MILTON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

GEORGE S. TOWNE AND JOSEPHINE JOHNSON MILTON, EXECUTORS OF THE WILL OF FLORENCE LINDSAY JOHNSON, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

SOPHIA GLEASON PIERCE BROWNELL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

SALLY MCKEE SPENS BLACK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

GEORGE S. TOWNE AND JOSEPHINE JOHNSON MILTON, EXECUTORS OF THE WILL OF WILLIAM PIERCE JOHNSON, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 54083, 54092, 57890, 53637, 53636, 53634.

Promulgated December 4, 1936.

*Felix T. Smith, Esq., Oscar Sutro, Esq.*, and *Richard E. Dwight, Esq.*, for the petitioners.

*W. Frank Gibbs, Esq.*, for the respondent.

148

OPINION.

MORRIS: We must first determine whether the sale of the Maine corporation stock under the proposal of November 21, 1925, in so far as these petitioners are concerned, was made by Johnson, Inc., and Pierce, Inc., as the holders and owners of 29,946 and 10,000 shares, respectively, or whether what transpired constituted a sale of those shares to the said Delaware corporation by the individual stockholders of Johnson, Inc., and Pierce, Inc.

One factor is clear and that is that the proposal of November 21, 1925, was originally made to Johnson, Inc., as the stockholder of the Maine corporation and not to its stockholders, and that it continued a party to the proposal until January 8, 1926. In fact there was no time prior to dissolution and distribution of such stock by Johnson, Inc., on January 8 when its stockholders had any power to negotiate the sale or exchange of that stock. Our inquiry, therefore, is whether what transpired between November 21, 1925, the date of the proposal, and January 8, 1926, when Johnson, Inc., dissolved and distributed the stock of the Maine corporation to its stockholders, was sufficient to constitute an executed sale of the Maine corporation stock under that proposal.

Johnson, Inc., and Pierce, Inc., joined in a power of attorney to Bloch on November 30, 1925, to accept the proposal for the purchase of their shares of common stock of the Maine corporation. On December 10, 1925, Bloch notified the stockholders of the Maine corporation that 99 percent of such stockholders had authorized him to accept the proposal. Indicative of the fact that the transaction was still in an executory state he said, in that communication, that if the proposal should not be carried out by the purchasers the certificates of the stockholders would be returned to them. On December 16, 1925, Bloch advised the bankers that the proposal was acceptable, with three noted exceptions of, what appears to have been, a substantive nature. Again, on January 2, 1926, Bloch sought the approval

of a further modification of the original proposal. Johnson, Inc., gave its approval of this modification on January 4, 1926, but what action other stockholders took respecting that we do not know.

Then came the dissolution of Johnson, Inc., on January 8, 1926, which had been in contemplation since December 4, 1925—application for voluntary dissolution having been filed at or about that time—and the appointment of its directorate as "trustees for the stockholders of said dissolved corporation." Although the record does not entirely clear up a dispute between the parties about the matter of the transfer of the Maine corporation shares owned by Johnson, Inc., on January 8 to its stockholders, it seems reasonably clear that the shares, which had been placed in escrow, were "retrieved" therefrom and that the cancellation of those shares and the issuance of new shares actually took place on January 8, 1926.

On the same date that dissolution of Johnson, Inc., took place the individual stockholders, according to their then respective shareholdings in the Maine corporation, empowered Bloch to accept the proposal of November 21, 1925, in their behalf, and they extended him full power to agree to all modifications of the original proposal as he should deem reasonable and proper. After the dissolution and on January 9, 1926, the bankers notified Bloch that the Delaware corporation had been organized; referred him to his letter of December 16, 1925, noting three exceptions to the original proposal, and informed him of their satisfaction therewith, at the same time making a further slight proviso that the new corporation take over the assets of the Maine corporation "as of" January 1, 1926. Bloch noted his acceptance to this further proviso on the same date. On January 11, 1926, the proposal, in response to a communication from the bankers, was accepted by the Delaware corporation pursuant to resolution on that same day.

On February 4, 1926, Bloch, acting as attorney for the stockholders of the Maine corporation, having received funds from the Delaware corporation, issued checks payable to the individual stockholders of Johnson, Inc., and the certificates of stock of the new Delaware corporation were issued in their names in payment for the 29,952 shares of stock of the Maine corporation formerly owned by Johnson, Inc.

The respondent argues that "where the sale of corporate assets has been agreed upon before dissolution of the corporation and before the creation of a trust, a sale by the trustee is a sale by the corporation", citing *Commissioner* v. *Lexington Ice & Coal Co.*, 62 Fed. (2d) 906; *Fred A. Hellebush et al., Trustees*, 24 B. T. A. 660; affd., 65 Fed. (2d) 902; *S. A. MacQueen Co.*, 26 B. T. A. 1337; affd., 67 Fed. (2d) 857; *Nace Realty Co.*, 28 B. T. A. 467; *Frank Kell*, 31 B. T. A. 212. The answer to this argument is twofold—first, in our opinion,

the sale of these shares had not been agreed upon before the dissolution of Johnson, Inc., and, secondly, the trustees, after dissolution, in so far as we are informed, had nothing to do with the sale of the shares distributed to stockholders of Johnson, Inc., on January 8, 1926. The transaction, in so far as those shares were concerned, was carried on by Bloch, a third party, under power of attorney running directly from the individual stockholders of Johnson, Inc. For those reasons we are not here concerned with the statutes of California governing the period during which the trustees may act either for the corporation or for the stockholders themselves. Therefore, *McPherson* v. *Commissioner*, 54 Fed. (2d) 751, has no application.

Furthermore, even if we were convinced that Johnson, Inc., and Pierce, Inc., were, for tax purposes, upon the accrual basis of accounting, we, nevertheless, would hold that sufficient had not been done prior to the dissolution of Johnson, Inc., to constitute a sale which would result in a taxable profit to that company during the period January 1 to January 8, 1926.

Respecting Pierce, Inc., however, a different conclusion must be reached for the reason, in our opinion, that sufficient had been accomplished in its behalf prior to dissolution on January 25, 1926, to render the profit derived from the sale of its 10,000 shares taxable to it. If it should be assumed that the company's return for the final period of its existence was properly prepared and filed on the cash receipts and disbursements basis we would, nevertheless, be of the same opinion—believing as we do that a binding contract was entered into prior to its dissolution to sell the 10,000 shares of stock of the Maine corporation, which it then owned—for the reason that a return purporting to be final, in order to be valid, must include in such final period all known items of income. A corporation may not effect a transaction on one day, out of which a known profit has resulted, and by reason of the fact that actual payment will not be forthcoming until after such dissolution takes place, a day or so later, exclude that income from its said final return, notwithstanding its basis of accounting may be cash receipts and disbursements. In our opinion, as to Pierce, Inc., everything necessary had been done prior to its dissolution in order to compel the payment of the consideration.

Having found that the deficiency asserted against Johnson, Inc., was erroneous there is, of course, no transferee liability against those alleged transferees. As to the liability of the alleged transferees of Pierce, Inc., the respondent, having the burden of proof, has failed to show the transfer of any assets to the petitioner in Docket No. 53637 from the estate of Sophia Gleason Pierce, who was a stockholder and received assets upon the liquidation of that company.

Therefore the proposed liability against her can not be sustained. The same conclusion must be reached in Docket No. 53634 on the authority of *DeForest Hulburd et al., Executors*, 27 B. T. A. 1123; affd., 296 U. S. 300. As to the petitioner in Docket No. 53636, the evidence shows that Pierce, Inc., was dissolved, its assets distributed; it was left without funds to pay the asserted deficiency; and, since she received $413,371.48, she is liable therefor under section 280 of the Revenue Act of 1926. *Grand Rapids National Bank*, 15 B. T. A. 1166.

Reviewed by the Board.

> *Judgment will be entered for the petitioners in Docket Nos. 54083, 54092, 57890, 53637, and 53634, and for the respondent in Docket No. 53636.*