THE PUGET SOUND NATIONAL BANK OF TACOMA, WASHINGTON, JOHN W. DAVIS, AND MRS. MILDRED FULLER WALLACE, AS RESIDUARY LEGATEES UNDER WILL OF H. C. WALLACE, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nó. 80461.   Promulgated August 3, 1937.

*George Donworth, Esq.*, for the petitioners.
*Harold D. Thomas, Esq.*, for the respondent.

OPINION.

DISNEY: The petitioners are residuary trustees under the will of H. C. Wallace, who died January 1, 1931, a citizen and resident of the State of Washington. On March 14, 1932, the executors of his estate filed an income tax return for 1931 with Burns Poe, collector of internal revenue at Tacoma, Washington, under the name of "Estate of H. C. Wallace", showing deductions in excess of gross income. The entire income was received by the estate of the decedent.

In April 1932 Forbes P. Haskell, a coexecutor of the estate, orally requested the collector to do whatever was necessary to have an audit made of the return so that the estate could be closed. Accordingly, on April 20, 1932, the collector wrote the following letter to George C. Earley, internal revenue agent in charge at Seattle:

One of the local trustees of the Estate of Hugh C. Wallace, former Ambassador to France, would like to have an early audit of his 1931 income tax return.

Would it be possible for you to assign Mr Carl D Eshelman or someone else to do the work before the transcripts are received back from Washington, D C? The trustee, who is Mr. Forbes B Haskell, President of the Puget Sound National Bank, has made a special request that this be done, which will expedite the closing of the estate.

On April 21, 1932, Earley wrote the following letters to Haskell, the collector, and the revenue agent, Eshelman:

To Haskell:

A letter has just been received from Mr. Poe stating that you are desirous of having an early audit of the 1931 income tax return of the Estate of Hugh C. Wallace.

Usually we do not take up the audits until the receipt of the 1931 return, but in this instance, in order that the closing of the estate may be expedited, we shall be glad to start the 1931 examination and get it out of the way as soon as possible. Mr. C. D. Eshelman will no doubt arrange with you for the audit within a few days.

To the collector:

We shall of course be glad to comply with the request of Mr. Haskell that the examination of the 1931 tax return of the Estate of Hugh C. Wallace be expedited in order that the estate may be closed. Mr. Eshelman has been advised of Mr. Haskell's wishes and will no doubt have the case under way in a day·or so.

To Eshelman:

The two attached copies of letters just written are no doubt self-explanatory, but I might add that Mr. Poe's letter states that Mr. Haskell is rather desirous of having an early audit of the estate's 1931 tax return out of the way so that the closing of the estate might be expedited. I think in this instance we might very well take up the examination and make it from the retained copy and then we can associate the original return with the case when we receive it.

A copy of the report made by the revenue agent on April 26, 1932, showing net income of $992.15, was transmitted to the estate on June 1, 1932, by the internal revenue agent in charge, with the information that the original had been forwarded to the Commissioner for final action. The letter of transmittal to the Commissioner contains the following paragraph:

The Collector of Internal Revenue in his letter dated April 20, 1932, states that Forbes P. Haskell, one of the executors of the estate, made a request for an early audit of the 1931 return.

The Commissioner received the letter on June 6, 1932.

At a hearing held on June 24, 1932, before the Superior Court of the State of Washington at Tacoma on the final report and petition for distribution of the estate of the decedent, Haskell testified that an audit of the income tax return of the decedent for 1931 disclosed that no tax was due. Thereafter on the same day the court issued an order distributing the residuary estate of the decedent, having a value in excess of one million dollars, to the petitioners to hold in trust pursuant to the terms of the will. On August 19, 1932, pursuant to an application therefor, the court discharged the executors of the estate.

On March 1, 1934, the respondent mailed a notice of deficiency by registered mail to the estate of the decedent, care of Haskell, dis-

closing a deficiency of $8,926.73 in income tax for 1931. The deficiency, together with interest thereon in the amount of $1,164.88 to May 18, 1934, was assessed May 18, 1934.

A notice and demand for the tax, plus interest, was made by the collector on May 23, 1934, and was received by Haskell on May 24, 1934.

In letters written on May 29, 1934, to the collector and the respondent, Haskell acknowledged receipt of the notice and demand, and advised them of the distribution of all of the assets of the estate of the decedent, the discharge of the executors, and the names and addresses of the residuary trustees of the estate.

On April 16, 1935, the respondent mailed a notice to the petitioners proposing to assess against them, as transferees, the deficiency, plus interest, determined and assessed against the estate of the decedent. Whether this proposed assessment is barred by the statute of limitations is the only question presented for decision.

The petitioners contend that the request made by Haskell for a prompt audit of the 1931 income tax return of the estate, construed in the light of the action taken thereon, constituted a request for assessment of tax liability within one year within the meaning of section 275 (b) of the Revenue Act of 1928, and operated to bar assessment against the estate after one year from April 21, 1932, the date of receipt of the collector's letter by Earley, and against them as transferees on April 21, 1934.

Section 275 (a) of the Revenue Act of 1928 provides generally for assessment of income tax within two years after the return was filed. Subdivision (b) provides, in part, that:

In the case of income received during the lifetime of a decedent, or by his estate during the period of administration, * * * the tax shall be assessed, * * * within one year after written request therefor (filed after the return is made) by the executor, administrator, or other fiduciary representing the estate of such decedent, * * * but not after the expiration of two years after the return was filed. * * *

A statute of limitations operates against the Government only when it gives its consent. The statute here prescribes a precise method for shortening the general period of limitation for assessment of taxes on income received during the course of administration of an estate. One of the conditions is that the request therefor be made in writing. We have said that the provision requires a strict construction. *Mrs. Niels (Mellie) Esperson, Executrix*, 13 B. T. A. 596; affd., 49 Fed. (2d) 259; certiorari denied, 284 U. S. 658. "When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode." *Botany Worsted Mills* v. *United States*, 278 U. S. 282. To obtain the benefit of a period of limitation there must be a "meticulous compliance" by the taxpayer

with all of the prescribed conditions. *Lucas* v. *Pilliod Lumber Co.*, 281 U. S. 245.

No contention is made here that the executors, or any of them, ever actually signed a request for assessment within one year. The petitioners argue, however, that the statute does not require a request signed by the taxpayer; that the letter written by the collector to Earley was written by the former as agent for the executors, and that Earley had ample authority to receive the request. The present proceeding does not require a consideration of the legal points raised by the argument.

We have said that if a taxpayer desires to come within the terms of section 275 (b), *supra*, his "request for assessment within the specified period must meet all the statutory requirements and be sufficiently clear to put the Commissioner on notice of such intention." *Mary Lee Winger, Executrix*, 30 B. T. A. 357.

The evidence of record on the verbal request made by the taxpayer is confined to the following testimony of Haskell:

I communicated with Mr. Poe. I talked with Mr. Poe regarding the matter and told him that we wanted to close the estate and that we would like to have an audit, and asked him what was necessary to do, and he advised me that request would have to be made to Mr. Earley in Seattle for the audit, and he offered to write Mr. Earley on my behalf to ask him to make the audit.

The words employed by Haskell to convey his intent to the collector were not of the kind that would have been used to clearly express a desire to bring the estate within the terms of the applicable statute. Neither the term "assessment" nor anything equivalent thereto, was used, and no reference was made to section 275. The request expressed nothing more than a desire to have an audit made of the income tax return of the estate to place the executors in a position to close the estate, something entirely different from a desire to be bound by a shorter period of limitation. It falls short of putting the Commissioner or any of his agents on notice of a desire to have the income tax liability of the estate assessed within one year. The correspondence of the collector and Earley reveals a like interpretation, for it refers merely to a request received for an audit, and does not disclose an understanding that the audit, in order to be effective for assessment purposes against the estate, would have to be made within one year. The request did not comply with the requirements of the statute and did not serve to shorten the period of limitation for assessment against the taxpayer. *Mrs. Niels (Mellie) Esperson, Executrix, supra; Mary Lee Winger, Executrix, supra.*

The petitioners next argue that the discharge of the executors on August 19, 1932, terminated the existence of, and the right to make a deficiency assessment against, the estate, and had the effect of

shortening the statutory period of limitation for assessment against them as transferees to one year later.

The respondent is not attempting in this proceeding to sustain an asserted deficiency in income tax against the estate and there is no need to consider the laws of Washington to determine whether the respondent has or had a right to make an assessment against the estate or whether power exists to compel the discharged executors to respond in their representative or individual capacity to an assessment against them for the deficiency. Our problem here is to determine whether the transferee liability asserted against the petitioners is barred by the statute of limitations, and the answer is not controlled by lack of a right to proceed against the taxpayer because of the *functus officio* status of its representatives. See *Hulburd* v. *Commissioner*, 296 U. S. 300.

The statute provides that income taxes of taxpayers "shall be assessed within two years after the return was filed." Sec. 275 (a), Revenue Act of 1928. This period was not shortened by the discharge of the executors of the estate prior thereto after a final accounting. *William B. Weigel et al., Trustees*, 34 B. T. A. 237. The case of *Hulburd* v. *Commissioner, supra*, relied upon by the petitioners, is not contrary to the rule. That case, as presented to the Supreme Court, involved transferee liability of an estate for unpaid income tax of a corporation dissolved during the lifetime of the decedent. The major question for decision was whether the executors were subject to assessment as transferees in their representative capacity after their discharge. The question of whether the liability was barred by the statute of limitations was decided by us in a preliminary report (21 B. T. A. 23) and was not presented to the Supreme Court for decision. Neither does *Nauts* v. *Clymer*, 36 Fed. (2d) 207, help the petitioners. There the deficiency notice mailed to one of the discharged executors of the estate was held to be insufficient to stay the running of the statute, with the result that neither the assessment subsequently made against the estate nor the transferee notice sent to Clymer was timely.

A further contention of the petitioners is that, if the request of Haskell for an audit be ignored, the statute bars assessment against them not later than March 15, 1935, or one year after the two-year limitation period for assessment against the estate. The argument on the point is, in substance, that with the discharge of the executors the estate ceased to exist as an entity and that the deficiency letter mailed to the estate on March 1, 1934, was a nullity and did not serve to extend the statute. The contention is without merit.

Irrespective of their previous discharge by the probate court, the executors could have used the deficiency notice as the basis for an appeal to the Board and the period of limitation would have been

stayed during the pendency of the petition before us even though we lacked jurisdiction to redetermine the deficiency. *American Equitable Assurance Co.* v. *Helvering*, 68 Fed. (2d) 46, affirming 27 B. T. A. 247; *U S L Battery Corporation*, 32 B. T. A. 810; affd., 84 Fed. (2d) 1020; certiorari denied, 299 U. S. 593.

The period for assessment against the estate did not expire until March 14, 1934, or two years after the return was filed. Sec. 275 (a), *supra*. The mailing of the deficiency notice to the estate extended the period of limitation for assessment against the taxpayer for 120 days, or to July 12, 1934. Secs. 272 (a) and 277. The provisions of section 311 (b) (1) extended the period for assessment against the petitioners to "within one year after the expiration of the period of limitation for assessment against the taxpayer." *Commissioner* v. *Gerard*, 78 Fed. (2d) 485. The notice to the petitioners, as transferees, was mailed on April 16, 1935, a date within the limitation period of three years and 120 days allowed by the statute under the facts prevailing here (in fact less than three years and 60 days), and less than one year after assessment was made against the transferor. It follows that assessment of the liability of the petitioners as transferees is not barred by the statute of limitations.

In view of the timely notice given the petitioners it is not necessary to consider the effect of the failure of the executors to notify the Commissioner of their discharge, as required by section 312 (a) in order to be relieved of liability in their representative capacity.

Reviewed by the Board.

*Decision will be entered for the respondent.*