## UNITED STATES v. BARBER et al.

### No. 2544.

District Court, D. Maryland.

Oct. 5, 1938.

Bernard J. Flynn, U. S. Atty., and G. Randolph Aiken, Asst. U. S. Atty., both of Baltimore, Md., and Lyle M. Turner, Sp. Asst. to Atty. Gen., for the United States.

S. Wallace Dempsey and Kelly Kash, both of Washington, D. C., and McIntosh & Thrift and William F. Podlick, all of Baltimore, Md., for defendants.

CHESNUT, District Judge.

In this case motions have been made by the defendants to dismiss the *second amended* bill of complaint. Similar motions were made to dismiss the *first* amended bill of complaint and an extended opinion was filed August 11, 1938 sustaining the motions but indicating that a second amendment would be allowed if the plaintiff could conform to certain requirements therein indicated.

The liability of the defendants is predicated on the general equitable trust fund doctrine affecting voluntary transfers, with notice of plaintiff's claim. The motion to dismiss the first amended bill of complaint was sustained on two grounds. (1) That the assessment made by the Commissioner against the taxpayer was void for the reasons therein stated; and (2) that the bill of complaint was too vague, indefinite and uncertain with respect to the alleged transfers by the taxpayer. In the opinion it was indicated that an amendment would be allowed if the pleader could properly allege that the tax assessment was a "Jeopardy" assessment; and if the facts were alleged with sufficient clarity to show the invalidity of the transfers as against the plaintiff's claim for taxes.

The second amended bill was filed September 10, 1938 and the defendants have filed their motions to dismiss on the ground that it does not show the prima facie validity of the assessment as a jeopardy assessment, and also because the amendment does not, as to the defendants respectively, show with sufficient clarity and certainty the invalidity of the transfers. In my opinion these motions must be sustained for both reasons.

I. The second amended bill does not allege that the assessment was a "jeopardy" assessment. On the contrary it alleges that the assessment (as an original assessment) was made by the Commissioner because the taxpayer had "failed to file an appeal with the Board of Tax Appeals within the period provided by law;" although the petitioner within one day after the allowed sixty days had filed an appeal from the Commissioner's determination with the United States Board of Tax Appeals, which was still pending before the Board when the assessment was made on May 7, 1932. Furthermore counsel for the Government at the oral argument on these motions expressly disavowed any contention that the assessment was made as a jeopardy assessment. His attention was called to the case of American Equitable Assurance Co. of New York v. Helvering, 2d Cir., 68 F. 2d 46, 48, where, under apparently somewhat similar circumstances it was held that the assessment could be treated as a jeopardy assessment; but nevertheless counsel again stated that there was no contention in this case that the assessment could properly constitute a jeopardy assessment. Under these circumstances I must adhere to the view expressed in the opinion heretofore filed that the assessment, as an original assessment, and not a jeopardy assessment, was void for the reasons therein indicated. A similar conclusion was announced by the Second Circuit in the case just cited. In addition to the discussion of that case in the former opinion, and the reference to subsequent cases in which it has been cited, my attention has now been called by counsel to the following cases in which the American Equitable Case has been cited with apparent approval although not on the precise point particularly involved. See United States v. Continental Nat. Bank & Trust Co., 7 Cir., 94 F.2d 81, 84; Olympic Refining Co. v. Commissioner, 32 B.T.A. 1056, 1063; Teague v. Commissioner, 32 B.T.A. 641, 643, 644; Puget Sound National Bank v. Commissioner, 36 B.T.A. 386, 391.

II. Comparison of the first amended bill with the second shows quite material differences in the facts alleged respectively, although the general theory of the bill is the same. The allegations as to the time of the transfers and the property so transferred to respective transferees is made more specific than in the original bill, although still not sufficiently definite. But while the second amended bill is more specific as to the facts, it is distinctly less definite as to the basic grounds of liability, under the equitable trust fund doctrine. Particularly the second amended bill does not allege that the transfers now attacked were made in fraud of the plaintiff or other creditors of the corporation and does not allege that the taxpayer corporation was insolvent at the time the respective transfers were made, except that it doubtless inferentially appears that as the plaintiff's unpaid tax claim was for about $4,000, and the taxpayer corporation has now no remaining assets, some one of the transfers, not specified in the bill as to the amount or time, must have rendered the corporation insolvent at the time it was made. It is also to be noted that the suit here is not against transferees of a corporation against whom a statutory assessment has been made. It is a plenary equity suit against transferees but it is not alleged the transfers of assets now sought to be vacated were made to them as stockholders in distribution of the corporate assets as in Phillips v. Commissioner, 283 U.S. 589, 51 S. Ct. 608, 75 L.Ed. 1289; Leighton v. United States, 289 U.S. 506, 53 S.Ct. 719, 77 L.Ed. 1350; United States v. Updike, 281 U.S. 489, 50 S.Ct. 367, 74 L.Ed. 984.

The suit is based on the equitable doctrine of a *trust fund* in the assets of a *corporation* for the benefit of its creditors. In this respect it is not apparent that the unpaid tax claim of the Government stands on a different footing from that of other unsecured creditors. But it is only on *insolvency* that the assets of a corporation properly constitute a trust fund for creditors. McDonald v. Williams, 174 U.S. 397, 19 S.Ct. 743, 43 L.Ed. 1022; United States v. Armstrong, 8 Cir., 26 F.2d 227, 230; United States v. Fairall, D.C., 16 F.2d 328; Lawrence v. Greenup, 6 Cir., 97 F. 906; Steinle v. Commissioner, 19 B.T.A. 325, 334, 335; Keller v. Commissioner, 21 B.T.A. 84, 90; 1 Cook on Corporations, 8th ed. p. 50.

The assessment was made on May 21, 1932. The corporation became inoperative under the Delaware law for non-payment of its annual franchise tax and was finally dissolved on March 31, 1936. At the time of the assessment the taxpayer corporation apparently had assets of about $300,000 and the tax liability was only about $4,000. There are no other creditors. Insolvency evidently did not arise until the distribution by the corporation of the last $5,000 of its assets. When this occurred and to whom such a distribution was made is not alleged in the bill. For this reason alone there would seem to be no basis for the attempt to subject to the plaintiff's claim the salary payments amounting in all to about $17,000, made some time during 1932, 33 and 34, to Elizabeth F. Barber, Leight F. Barber and William Byrd Barber even though it is also alleged that no services were performed for such salary payments. Nor is there any apparent sufficient reason equitable or legal, to seek to hold liable the American Fidelity Loan Corporation for the loans alleged to have been made to it by the taxpayer corporation as alleged in paragraph 15 of the bill, as fraud is not alleged with respect to the transaction and there is nothing to show that the taxpayer corporation was then insolvent.

With respect to the major assets of the taxpayer corporation, the allegations of the bill are in substance that certain listed assets of the estimated value of about $300,000 were owned by the corporation between May 21, 1932, and March 31, 1936; and that *after* May 21, 1932 and *prior* to March 31, 1936, many of these assets, particularly specified "were in the name or possession of certain individual defendants"; but the only allegation as to the time or circumstances of the acquisition or possession is in paragraph 21 of the bill "that they were distributed in liquidation among the defendants by permitting them to retain title or possession in the same form and amounts as they were held or listed above"; and that the defendants when they acquired possession knew of the taxpayer's tax liability; and that Leight F. Barber, William Byrd Barber and Elizabeth F. Barber were officers and directors of the taxpayer corporation; that Guil Barber was in possession of the books and records with power of attorney to draw and sign checks in the name of the taxpayer; and that he was also president of the American Fidelity Loan Corporation and Leight F. Barber and William Byrd Barber were the controlling stockholders of it.

Although the bill does not allege any fraud, and does not allege that the transfers were made to defraud creditors nevertheless the prayer of the bill asks the court to adjudge that the transfers of the assets as alleged in the bill "were in fraud of creditors and invalid and that the defendants are trustees in equity holding such benefits for the payment of the taxpayer's creditors", and it is further prayed that all the defendants turn over to the court *all of the assets* of the taxpayer in their possession and that an accounting be had and the assets applied to the payment of the tax account. In view of the nature of the case the relief prayed for is certainly very drastic. The bill does not expressly allege that the transfers were even without consideration although this may possibly be inferred. It is not alleged that the transfers were made to the defendants or any of them as stockholders of the taxpayer corporation, although it is perhaps inferential, if it is permissible to look at the allegations of the first amended bill of complaint, that the taxpayer corporation was in substance a family corporation. As to Guil Barber, it may be said that it appears in a general way that he was in control of the taxpayer corporation and if it were clearly alleged that as such controlling officer or stockholder he caused the last $5,000 in value of assets to be distributed without consideration to some person or corporation, with knowledge of the plaintiff's unpaid tax claim, he and the transferee, with like knowledge would be personally liable even though it is not ex-

pressly alleged that the transfers were made fraudulently. But no such transfer is identified in the bill.

As a general statement it is inferable from the bill that there possibly exists a case in which there is at least a moral if not a definitely equitable obligation on the part of some one to pay the plaintiff's claim, but it is certainly most indefinite and uncertain from the allegations of this second amended bill who is so responsible. If this were an original bill, and the assessment which is the basis of the liability were prima facie valid, the appropriate remedy, especially under the new federal rules of civil procedure, might be not to dismiss the bill but to require that it be made more certain and definite in its allegations as to the responsible parties; but as it is a *second* amended bill of complaint filed after a quite full discussion of the insufficiency of the first amended bill of complaint, the presumption would seem to be that the plaintiff has now stated its case as best it can and as it is still too vague and uncertain in its averments to impose prima facie liability on any one of the defendants, the only course seems to be to dismiss it. On the assumption of the validity of the assessment it is perhaps unfortunate that the present situation would seem attributable to the plaintiff's lack of greater promptness in seeking to enforce its claim.

For the aforegoing reasons it is hereby ORDERED this 5th day of October, 1938, by the District Court of the United States for the District of Maryland that the plaintiff's second amended bill of complaint be and the same is hereby dismissed.