**UNITED STATES ex rel. GIRARD TRUST CO. v. HELVERING.***

No. 6618.

United States Court of Appeals for the District of Columbia.

Argued April 8, 9, 1936.

Decided May 18, 1936.

*Writ of certiorari denied 57 S. Ct. 229, 81 L. Ed. ——.

H. C. Kilpatrick, of Washington, D. C., for appellant.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Robert H. Jackson, Norman D. Keller, and Thomas G. Carney, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

GRONER, Associate Justice.

John A. Brown, Jr., a citizen and resident of Pennsylvania, died testate in 1919. In his will he directed appellant, whom we shall call Girard, to take over his residuary estate in trust, collect the income, and, after payment of certain expenses, to distribute the net to the extent of $200,000 annually to his widow, Harriet E. Brown. The widow elected, in compliance with the laws of Pennsylvania, to accept the income in lieu of her statutory share of the estate. Girard in the performance of the trust distributed to the widow the entire net income of the estate (which did not exceed $200,-000 annually) for the years 1924 to 1930, inclusive; and, in computing the net taxable income of the estate for each of those years, it deducted the amount so distributed. Section 219(a) (2), Revenue Act of 1924, and corresponding sections of subsequent acts, 26 U.S.C.A. § 161(a) (2) and note. The widow reported the amounts received by her as taxable income for the years 1924 to 1927, inclusive. She did not report as income the amounts received in 1928 and thereafter.

Between 1926 and 1928 three Circuit Courts of Appeals [1] held that income received by a widow, who had accepted such income in lieu of dower or statutory rights, was not taxable. "These cases held that by relinquishment of her rights, she came to occupy the position of the purchaser of an annuity." Helvering v. Butterworth, 290 U.S. 365, 369, 54 S.Ct. 221, 222, 78 L.Ed. 365. The widow, relying on those decisions, filed claims [2] with the Commissioner for refund of taxes which she had paid on the income distributed to her by Girard during the calendar years 1924 to 1927, inclusive. The Commissioner, also relying on the decisions, assessed[3] deficiencies—involving the same income distributed to the widow— against Girard for the years 1924 and 1925, on the ground that in computing the taxable net income of the trust the deduction by Girard of the amounts of income currently distributed to the widow had been improperly taken. (We assume the selection only of the years 1924–1925, was because of the approaching bar of the statute of limitations.) On appeal by Girard the Board sustained the Commissioner. The Commissioner, thereupon, September 17, 1931, paid the refund claimed by the widow, in an aggregate sum of approximately $78,000. However, in December following, Girard filed a petition for review of the decision of the Board as to it, but in lieu of bond paid the assessment against it with interest, in an aggregate amount of sixty-four thousand odd dollars. In April, 1933, the Court of Appeals in the Third Circuit[4] reversed the decision of the Board and held that the income payable to the widow was not taxable to Girard, and that the latter as trustee was authorized to deduct, as it had, the amount distributed to the widow, in making its return. Thereafter the Board, pursuant to the mandate of the court, entered its order July 7, 1934, finding that there were no deficiencies due from Girard

---

[1] Warner v. Walsh, 15 F.(2d) 367; United States v. Bolster, 26 F.(2d) 760, 59 A.L.R. 491; Allen v. Brandeis, 29 F.(2d) 363.

[2] (March, 1929; August, 1929; January, 1931).

[3] (March, 1929).

[4] See Butterworth Case, 63 F.(2d) 944, a companion case to the Girard appeal, the ruling in which resulted in a reversal of the Board in the Girard appeal.

for 1924 and 1925, but overpayments for such years in the aggregate amount of its 1932 cash payment made, as we have seen, in lieu of bond, plus a further and later payment of around $4,000 for the year 1928.

In December, 1933, the Supreme Court decided Helvering v. Butterworth, 290 U.S. 365, 54 S.Ct. 221, 78 L.Ed. 365, settling the conflict in the Circuits and holding that such income as is here involved was taxable against the widow. The result of this was to invalidate the refund made by the Commissioner to the widow. But the statute of limitations had, in September, 1933, run against recovery from the widow. In this state of the case, the Commissioner declined to refund to Girard the taxes erroneously collected from it; and the purpose of this suit is to require the Commissioner to make repayment in compliance with the decision of the Board, which long ago became final.

Laying aside for the time being the technical aspect of the question, and having regard only to the ultimate facts, the case is this: Mrs. Brown owes the United States a large amount of money for taxes. The statute of limitations has intervened, and the government cannot collect. On the other hand, her trustee, Girard, has paid to the United States a large amount of money for taxes for which it was not liable and which the Board has determined it is entitled to recover. The money, however, which it mistakenly paid belonged to Mrs. Brown and, if recovered, will be payable to her; so that if we shall order the lower court to issue the writ, the result will be to require the United States to pay over money which—while technically that of Girard—actually would go to Mrs. Brown. Obviously this is inequitable and ought not to be done unless required as a matter of law. In saying this much, we are not influenced by the fact that the government is itself a party or that the subject we are dealing with is taxation. The result to be reached should be wholly uninfluenced by those facts. When the United States is properly a party in a litigation in its own courts, it occupies no different or better position than the humblest citizen. Overreaching on its part should be no more condoned than if practiced by an individual. We have said as much before. O'Laughlin v. Helvering, 65 App.D.C. 135, 81 F.(2d) 269. Impelled by these considerations, we proceed to a discussion of the case as made.

■ First. We are told by counsel for Girard that the Commissioner's duty to refund the overpayments is mandatory. It is said that under section 1001(c, d) of the Revenue Act of 1926, as amended by section 603 of the Revenue Act of 1928 (26 U.S. C.A. §§ 644, 645), when the taxpayer loses his case before the Board and appeals to the court, he may either file a bond to stay collection or pay the amount claimed with the assurance that it will be returned to him if his appeal is successful—without the necessity of following the technical procedure of filing a claim as in the case of an ordinary taxpayer; in short, that payment under these circumstances is in the nature of a cash deposit in lieu of a surety bond. This is, we think, a correct statement of the law. Girard, having elected to pay rather than give a bond and having won its case in the Court of Appeals, was entitled when the decision of that court became final—assuming that no other taxes were claimed and shown to be due—to a refund of the amount paid. This we said in McCarl v. U. S. ex rel. Leland, 59 App. D.C. 362, 42 F.(2d) 346.

Undoubtedly, as we think, the decision of the court and the finding of the Board made mandatory the duty of the Commissioner to make the refund. Blair v. United States, 55 App.D.C. 359, 6 F.(2d) 484; James v. United States (Ct.Cl.) 38 F.(2d) 140. We are, therefore, compelled to reject the proposition of the Commissioner that the statute authorizing refunds, under the circumstances we have mentioned, involves the exercise of judgment and discretion.

■ Second. We likewise find ourselves in disagreement with the Commissioner on the point that Girard has an adequate remedy at law. The suggestion that it could, by action in the Court of Claims or the District Court, enforce payment of its claim against the United States, is without force. It has a judgment or the equivalent of a judgment in the order of the Board of Tax Appeals—now final—and nothing it could obtain from either the Court of Claims or a District Court would be any more adequate or specific. The statute imposes on the Commissioner the duty of making payment in accordance with the final determination of the Board; and if, as we think, this duty is mandatory, the writ here prayed for is an appropriate remedy. See Houston v. Ormes, 252 U.S. 469, 472, 40 S.Ct. 369, 64 L.Ed. 667; U. S. ex

rel. Cole v. Helvering, 64 App.D.C. 35, 73 F.(2d) 852; McCarl v. U. S. ex rel. Leland, 59 App.D.C. 362, 42 F.(2d) 346; Lucas v. U. S. ex rel. Blackstone Mfg. Co., 59 App.D.C. 389, 45 F.(2d) 291. And if it can be shown that it ought to issue, it is of no consequence that another remedy in another tribunal might produce the same result. Knox County v. Aspinwall, 24 How. 376, 385, 16 L.Ed. 735; Blair v. United States, supra.

Third. This brings us to consider the only remaining ground of defense, which is that Girard, in equity and good conscience, is not entitled to the writ of mandamus. In support of this position, the Commissioner says that Girard and the widow are the same parties in interest and should be treated, in a petition addressed to the conscience of the court, precisely as though the claim of the government against the widow was in fact a claim against Girard. In reaching the conclusion we have reached, we shall assume, as Girard insists, that ordinarily a final decision of the Board of Tax Appeals that an overpayment has been made, is conclusive between the parties. Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 727, 49 S.Ct. 499, 73 L.Ed. 918. But we cannot assume, as is contended by Girard, that because the Commissioner— before the Board—failed to interpose the defense he now makes here, he is estopped to make it anywhere else. The erroneous refund to the widow was not a question within the Board's jurisdiction. Its statutory authority goes no farther than the ascertainment that the taxpayer has made an overpayment and is entitled to a refund. But we do not rest our decision on that point alone, but also, and more particularly, upon the ground that the writ of mandamus is not a writ of right, but is awarded only in the exercise of a sound judicial discretion and to compel the performance of an act which in equity and good conscience ought to be performed. Stated otherwise, the granting of the writ does not follow of necessity the showing of a legal right. United States v. Dern, 289 U.S. 352, 359, 53 S.Ct. 614, 77 L.Ed. 1250. Even in such circumstances, it should be denied if the result will be to accomplish a moral wrong. "It issues to remedy a wrong, not to promote one; to compel the performance of a duty which ought to be performed, not to direct an act which will work a public or private mischief or will

be within the strict letter of the law but in disregard of its spirit." Duncan Townsite Co. v. Lane, 245 U.S. 308, 311, 38 S. Ct. 99, 101, 62 L.Ed. 309. We may, therefore, grant Girard's contention that there is no statute permitting the overpayment of tax by one taxpayer to be set off against a tax due from another taxpayer, and we may lay aside altogether the disputed legal right of the United States to a counterclaim or recoupment. We may concede, furthermore, that the claim of the United States against the widow is not a claim for taxes, but a claim for money erroneously paid, and that there is nothing in the statute which permits the money due Girard to be credited against the taxes due by the widow, and we may grant that, by reason of the running of the statute, the United States is wholly without a right to credit on the one hand or collect on the other. But we nevertheless get back to the single proposition whether, in a case like this, the court ought to exercise the power, which ordinarily it has, to compel the doing of the thing which Girard asks.

There is no charge of fraud or bad faith in this case. Both Mrs. Brown and the Commissioner acted on the natural and reasonable assumption that the law had been definitely settled by the decisions in the three Circuits. It is true that, when a different Court of Appeals decided that the Commissioner had erroneously assessed and collected the tax from Girard, there was still time in which to bring suit against Mrs. Brown to get back the money the Commissioner had mistakenly refunded to her. But in the meantime the conflict of view in the several Circuits had been submitted to the Supreme Court. The Commissioner, instead of acting on the safer side, awaited the decision of that Court. We do not think his inaction in this respect should be characterized as so gross as to create in this proceeding equities in favor of the widow or to destroy the equities in favor of the United States. Mrs. Brown owes the United States a larger sum of money than the sum involved in this proceeding. If the latter sum had been paid to the Commissioner by her rather than by her trustee, clearly she would not now be able to recover it. But here it is insisted that, because the trustee is a distinct and separate entity and because the assessment was made against it and the payment made by it, a different conclusion

must be reached, even though it be conceded the money paid by it belonged to Mrs. Brown.

Anderson v. Wilson, 289 U.S. 20, 26, 27, 53 S.Ct. 417, 77 L.Ed. 1004, and Wynne v. Commissioner (C.C.A.) 77 F.(2d) 473, recognize the principle that the trustee and beneficiary are not identical; and Hulburd v. Commissioner, 296 U.S. 300, 305, 56 S.Ct. 197, 80 L.Ed. 242, applies the rule that one taxpayer may not be assessed to pay the taxes of another. But in the view we take these principles have no relation to the situation here. Keeping in mind the principle that mandamus should never issue to work a public or private mischief, the rule in those cases gives place to that other rule—which is just as firmly established—that when necessary to prevent a wrong or do a right, courts in order to do equity will look through the shadow to the substance.

In Luckenbach S. S. Co., Inc., v. W. R. Grace & Co. (C.C.A.) 267 F. 676, 681, a subsidiary corporation wholly owned by its parent breached its contract to furnish cargo space for the carriage of nitrates between Chile and the United States. The subsidiary was financially unable to respond, and in a suit against the parent, the latter was held liable on the ground that the two corporations were, in the circumstances, substantially one. Judge Knapp said:

"For all practical purposes the two concerns are one, and it would be unconscionable to allow the owner of this fleet of steamers, worth millions of dollars, to escape liability because it had turned them over a year before to a $10,000 corporation, which is simply itself in another form."

Under a different state of facts, but to the same end, the Supreme Court, in Chicago, M. & St. P. R. Co. v. Minneapolis, etc., Ass'n, 247 U.S. 490, 38 S.Ct. 553, 557, 62 L.Ed. 1229, said that courts "will not permit themselves to be blinded or deceived by mere forms of law but, regardless of fictions, will deal with the substance of the transaction involved as if the corporate agency did not exist and as the justice of the case may, require." See, also, to the same effect: Abercrombie v. Brinkman (C.C.A.) 293 F. 375; Lewis v. Fifth-Third National Bank (C.C.A.) 274 F. 587.

Except for procedural differences, this case is identical with White v. Stone (C.C.A.) 78 F.(2d) 136, 138. In that case the proceeding was an action for money had and received—here for mandamus—but in each, to secure the refund of taxes assessed against and paid by trustees, not liable, for the benefit of the beneficiary, who was. There it was held the trustees could only recover by showing superior equities in their favor. We can think of no reason why the same rule should not apply here. In either case the moral obligation is the same. In disposing of the case, the court said:

"Mrs. Stone is alive and the sole beneficiary under the trust. If the trustees are allowed to recover, it will redound to her benefit, and it is agreed that, had the income in question been taxed to her instead of to the trustees, she would have been required to pay a greater sum than will be offset by the allowance of this plea. Clearly no injustice will be done her by so doing. Furthermore, Mrs. Stone, the sole beneficiary, is the real plaintiff in interest, and equity and justice require that her tax liability should be offset against the claim of the trustees."

Girard's case has been presented and argued with force and ability and, if the answer depended only on the ascertainment of its legal rights, the conclusion would have to be in its favor; but, as we have shown, the remedy by mandamus is controlled by equitable principles. Considered from that point of view, to grant it here would not vindicate a right but do a wrong. Because of that, we think it is our duty to leave the parties as we find them.

Affirmed.