## HAMMERMILL SECURITIES CORPORATION v. NOEL, Collector of Internal Revenue.

District Court, W.D. Virginia, at Roanoke.

Dec. 31, 1938.

Hunton, Williams, Anderson, Gay & Moore, of Richmond, Va., for plaintiff.

Frank S. Tavenner, Jr., Asst. U. S. Atty., of Woodstock, Va., for defendant.

PAUL, District Judge.

This is a suit for a refund of deficiency income and profits tax for the year 1918, alleged to have been assessed against and paid by the plaintiff. A jury was waived and all questions of law and fact have been submitted to the Court. ·

The Hammermill Securities Corporation was incorporated in Virginia in 1916. It was a holding company and its only capital assets consisted of the entire outstanding stock of the Hammermill Paper Company, a Pennsylvania Corporation, engaged in the manufacture of paper. For the sake of brevity, these corporations will be referred to respectively as the Securities Corporation and the Paper Company. In January, 1920, the Securities Corporation was dissolved, but thereafter, in March, 1922, was revived pursuant to the provisions of the Virginia statute and continued to exist as a Virginia corporation until January, 1923, when it was again dissolved. Prior to its final dissolution in Virginia, the Securities Corporation became a corporation of the State of Pennsylvania in May, 1922, through the provisions of a Pennsylvania statute authorizing foreign corporations to become corporations of Pennsylvania. Having become a Pennsylvania corporation, the Securities Corporation, in August, 1922, and pursuant to the laws of Pennsylvania, merged and consolidated with the Paper Company. The corporation resulting from this merger continued in the business of manufacturing paper under the name of Hammermill Paper Company with its plant and principal office at Erie, Pennsylvania. Following the merger the Securities Corporation ceased to exist except in so far as the Pennsylvania statute

provided for the continuance of a corporate status for the purpose of winding up its affairs.

During the existence of the Securities Corporation its officers were substantially the same as those of the Paper Company; and, after the Securities Corporation became a corporation of Pennsylvania, its business address was the same as that of the Paper Company.

In 1918, the tax year in question, the only assets of the Securities Corporation consisted of the stock of the Paper Company and its only income was derived from dividends on that stock, these amounting to $45,000. The two corporations filed a consolidated return for 1918, from which the relationship of the corporations appeared. This return showed the amount ($45,-000) received by the Securities Company and showed a tax liability of $657,778.25, based solely on the income and profits of the Paper Company. No agreement or statement was filed providing how the tax should be paid as between the two corporations and the Paper Company paid the tax.

On review of the returns made by these corporations question arose as to the correctness of the taxes paid for several years, including 1917, 1918 and 1919. In March, 1920, the Paper Company executed and filed a power of attorney appointing the firm of Covington and Burling of Washington, D. C., as its attorneys to represent it before the Bureau of Internal Revenue in tax matters. In the course of the years, while this matter was pending, two other powers were furnished to include additional attorneys. In each instance, so far as appears, the power of attorney was executed by the Paper Company alone.

The matter was pending before the Bureau for a period extending over some years, during which the Bureau, from time to time, requested waivers extending the period within which deficiency determinations could be made and these were executed by both corporations. Both corporations in turn filed claims for refund of taxes already paid. On February 4, 1924, the Bureau, by a letter addressed to the Hammermill Paper Company at Erie, Pennsylvania, notified that corporation that an examination of its income and profits tax return for 1918 disclosed an additional tax liability of $202,979.36 for that year. Schedules were attached showing how the amount was arrived at. These schedules

also specifically showed that there was no tax liability on the Hammermill Securities Corporation. On the same date, a letter was addressed to the Securities Corporation, in care of the Paper Company, at Erie, inclosing the same schedules.

From this point, the Paper Company directed its effort to procure relief from the proposed additional tax set out in the letter of February 4, 1924. Under date of March 1, 1924, it filed an appeal from the deficiency determination, setting forth various reasons why it considered the same erroneous and containing computations, etc., in support thereof. This was supplemented by further information filed under date of April 7, 1924. Both the appeal and the supplemental matter were filed in the name of the Paper Company alone. In the appeal, the Paper Company also applied for what is known as a "special assessment" under Sections 327 and 328 of the Revenue Act of 1918, 40 Stat. 1093, which empower the Commissioner of Internal Revenue to depart from the usual method of computing the tax where abnormal conditions exist and permit him to determine the tax by comparison with other representative corporations engaged in a similar business. The application for a special assessment was granted and on February 20, 1925, the Bureau sent to the Paper Company a statement setting forth that such special assessment showed an additional tax liability of $62,700.51 for the year 1918. The figures on which this was based were set forth and the statement again showed that no tax was assessable against the Securities Corporation. No assessment resulted from this finding, as further protests and further efforts for relief were made.

Numerous communications and conferences were had between the Bureau and the attorneys for the taxpayer over a period of several years. On September 1, 1927, the attorneys representing the taxpayers wrote to the Commissioner of Internal Revenue referring to the fact that special assessment had been granted several years before but stating that as a result of the application of proper rates of depreciation the company's net income and invested capital had been materially changed from that originally considered by the Bureau. They asked an opportunity to confer for the purpose of agreeing upon new and proper comparatives as the basis for special assessment. It appears that a recomputation of net income and invested capital of

the Paper Company was made for the years 1918 and 1919 and accepted as correct, and thereafter, on January 18, 1928, the Bureau directed a letter to the Hammermill Securities Corporation in which it is said: "A review of your income and profits tax returns and those of your affiliated company for the years 1918 and 1919 has resulted in the determination of deficiencies in tax of $106,315.12 and $146,859.68, as shown in the attached statement."

The statement referred to in the above letter clearly shows that the computation of the deficiency assessed was based upon the property and income of the Hammermill Paper Company. On January 24, 1928, attorneys for the taxpayer, in a letter captioned in the name of both corporations, acknowledged receipt of the notice of January 18th, and entered further objection to the deficiency determination on the ground that proper comparatives had not been used.

Subsequently, on March 27, 1928, the Bureau addressed a letter to the Securities Corporation stating that "you are advised that the determination of your tax liability for the years 1918 and 1919 discloses a deficiency of $219,382.34, as shown in the attached statement." The attached statement showed that of the above amount $73,224.51 was for the year 1918; the balance for 1919. The statement also clearly shows that the tax for 1918 was to be assessed in the name of Hammermill Paper Company and the computation of the tax is shown and stated to be upon the profits and income of the Paper Company. This is the tax with which this case is concerned. A copy of a letter of March 27, 1928, advising of the determination of the tax specifically informed the taxpayer of his right to appeal to the Board of Tax Appeals within sixty days from the date of the mailing of the letter.

On May 4, 1928, the attorneys for the taxpayer, in a letter addressed to the Special Advisory Committee of the Bureau of Internal Revenue, referred to receipt of the letter of March 27th fixing the deficiency and requested a conference about the case prior to the expiration of the 60 day period. By letter dated May 11, 1928, the Advisory Committee notified the attorneys that a conference was not deemed practicable. The taxpayer took no appeal to the Board of Tax Appeals.

On June 9, 1928, after the expiration of the sixty day period, the Commissioner of Internal Revenue made formal certificate of the determination of the tax and the same was entered on the assessment list in the name of Hammermill Securities Corporation showing taxes in the amount of $73,224.51, plus interest of $10,053.82. The assessment list having been sent to the Collector of Internal Revenue in Richmond, Virginia, that official on June 13, 1928, mailed a notice and demand for payment to the Securities Corporation at Erie, Pennsylvania. On June 23, 1928, the Collector in Richmond received payment of the full amount of tax and interest. Payment was made by a cashier's check of the First National Bank of Erie, Pennsylvania, dated June 21, 1928, drawn to the order of Hammermill Securities Corporation and endorsed by the latter to the order of the Collector of Internal Revenue, Richmond, Virginia. This cashier's check, in the amount of $83,278.33, was purchased by Hammermill Paper Company and the amount thereof was charged to the checking account of the Paper Company in the First National Bank of Erie. At the time this payment was made, the Securities Corporation had no assets, having been dissolved some years before.

In the letter transmitting the check to the Collector, it was stated that payment was made under protest; that the Securities Company did not owe the tax in question; that it was contended by the Securities Corporation that for the year 1918 it had no income on which such deficiency could be based.

On June 11, 1932, a formal claim for refund was filed with the Bureau. This was four years, lacking ten days, from the time payment was made. In the statement accompanying the claim for refund and which sets out the basis for the claim, the claimant, after reviewing the history of the Securities Corporation up to its dissolution in 1923 and the assessment and payment of the tax, states: "The income for 1918 on which the alleged tax in question was computed was the income of the Hammermill Paper Company, not the Hammermill Securities Corporation, and this being true, any tax properly due under the law should have been assessed against and collected from the Hammermill Paper Company. There was and is no agreement, either express or implied, between the Hammermill Securities Corporation and the Hammermill Paper Company that the former would pay any tax due on the 1918

income of the latter company. The income, if any, for 1918, on which the $73,224.51 was computed was not the income of the Hammermill Securities Corporation, and it follows that it did not owe the tax in question for that year."

By letter of November 27, 1933, the Bureau wrote the Securities Corporation that its claim for refund had been considered and would be disallowed. In this letter, it was stated, among other things: "On the basis of the facts disclosed in this case, the Bureau holds that the tax in question was actually collected from and paid by the Hammermill Paper Company. * * *"

The letter impliedly recognizes that the tax should have been or was intended to be assessed against the Paper Company, for it is said: "In view of the foregoing, it is held that the error in the assessment of the tax is immaterial since it was actually paid by the corporation which was liable for the same; * * *".

Formal disallowance of the claim for refund was made on December 29, 1933.

Consideration of the above stated facts discloses that this controversy had its origin in the fact that the Bureau of Internal Revenue entered in the name of the Securities Corporation a deficiency assessment based upon the income and profits arising from the operations of the Paper Company. It is equally as apparent, I think, that the assessment was entered against the Securities Corporation through mere inadvertence or because, the corporations having filed a consolidated return disclosing their intimate affiliation, it was not deemed material to distinguish between them in entering the assessment.

It is conceded that the Securities Corporation as such and alone owed no tax for the year 1918. This was recognized at the inception of the controversy over these taxes. When, on February 4, 1924, the Bureau notified the Paper Company that examination of the 1918 return disclosed an additional tax liability, it furnished a statement showing computation of the claimed tax in which it specifically set forth that there was no tax due by the Securities Corporation and that the amount claimed was against the Paper Company only.

It must also be conceded, for it clearly appears, that from the time when the additional tax liability was first asserted by the Bureau, through the years intervening until it was paid, the controversy revolved around the operations of the Paper Company and it was the income and profits arising from these operations only which were the subject of the prolonged negotiations and contentions between the parties. There cannot be any doubt that all of the parties and their attorneys recognized and acted upon the fact that the operations of the Paper Company alone were involved in the asserted tax liability. Apparently, however, it was considered unnecessary to emphasize or even to note any distinction between the corporations and it was this which led to the assessment being entered as it was.

For this confusion all parties would seem to be equally responsible. The return for 1918 showed a tax due which was paid by the Paper Company, yet a claim for refund of a portion of this tax was filed in April, 1922, in the name of the Securities Corporation. Later, in 1925, claims for refund of the total tax paid were filed separately by both companies and when question arose as to a possible deficiency assessment waivers were filed by both companies. On the other hand, in the several designations of attorneys to represent the taxpayer, so far as the record shows, the appointment was executed in the name of the Paper Company only and that company alone was designated as the taxpayer. In correspondence the heading describing the subject of the letters was sometimes in the name of one company, sometimes the other, and sometimes both. Similarly, correspondence was sometimes signed in the name of one company, sometimes by the other.

The first notification of a deficiency assessment was in a letter of February 4, 1924, addressed to the Paper Company and the reply to this, with its accompanying request for special assessment, was made in the name of the Paper Company alone. A letter dated September 1, 1927, from the attorneys for the taxpayer to the Bureau on the subject of the special assessment is headed in the name of both companies and refers to the "above named taxpayer"; while another letter on the same subject, written by the same attorneys on October 12, 1927, is headed in the name of the Paper Company alone. Again, on January 24, 1928, these attorneys headed another letter in the name of both companies. In their letter of May 4, 1928, asking the spe-

cial advisory committee for a conference, these attorneys refer only to the Securities Corporation. Apparently the names of the companies were used indiscriminately and interchangeably. During the entire period of the controversy over the deficiency assessment both companies had the same address in the city of Erie, Pennsylvania, and all communications to either company were received and considered by the same persons, who were officers of both companies. Communications from and instruments executed by both companies were signed in many instances by the same person. For example, a waiver dated March 10, 1925, is signed in the name of the Securities Corporation by Wm. F. Bromley, Ass't Treas.; and waiver dated March 12, 1925, in the name of the Paper Company is signed by the same person as secretary. Waivers filed by both companies dated September 30, 1925, are both signed (illegibly) by the same person as treasurer. Waivers by both companies under date of November 6, 1926, are executed by Norman W. Wilson, as vice-president of each company. On March 13, 1924, a claim for refund of tax paid previously was filed by the Paper Company and signed by Wm. F. Bromley as assistant treasurer of that company. On March 25, 1935, another claim for refund was filed by the Paper Company, executed by Bromley as secretary.

As before stated, it is conceded that the tax in question was based solely on the operations of the Paper Company and that the operations of the Securities Corporation in no way entered into its computation. The only explanation of the assessment in the name of the Securities Corporation is that it was due to an inadvertent error or that it was not considered material as to which name was used. It is obvious that if, at any time during the controversy, anyone in interest had pointed out that it was the operation of the Paper Company which was the subject of the tax and had insisted that all reference to the Securities Corporation be eliminated, the error in the assessment would not have been made. The plaintiff was notified on March 27, 1928, that the tax would be assessed against it. The letter of notification was addressed to the Securities Company but the accompanying statement plainly showed that the tax was based on the operations of the Paper Company. If at that time plaintiff had called attention to the fact that the asserted liability was not against it, but against the

Paper Company, there is no doubt that the Bureau would have at once recognized the propriety of the suggestion and corrected the assessment. The plaintiff also had a right to appeal to the Board of Tax Appeals. It neither attempted to have the clerical error corrected nor did it take an appeal. On the contrary, it paid the tax with funds of the Paper Company and, after waiting until such time had elapsed as that no new or further assessment could be made, it filed claim for refund.

It is true that payment of the tax was accompanied by a letter protesting the propriety of the tax, but this protest was in such general terms as to create the impression that it was the mere formal protest usual in such payments. Four years later, when the claim for refund was filed, the plaintiff, for the first time, advanced the contention that any tax claimed should have been assessed against the Paper Company as distinguished from the Securities Corporation. And it is notable that in the claim for refund no contention is made that the tax was not due the Government, but only that "The income for 1918 on which the alleged tax in question was computed was the income of the Hammermill Paper Company, not the Hammermill Securities Corporation", and that when the tax was assessed and collected it was barred by the statute of limitations.

It is not possible to say whether the plaintiff, at the time the tax was paid, had in mind the now asserted effect of the error in the assessment and delayed filing a claim for refund until the time had passed when a new assessment could be made; or whether a belated recognition of the situation inspired the claim for refund. In the present suit, no question of limitations is raised and the case of the plaintiff rests solely on the facts stated herein, namely, that any tax that was due was assessable against the Paper Company and that the Securities Corporation owed no tax and had never agreed to pay any part of the taxes owing by the Paper Company. The defendant, admitting the facts, states that the Paper Company owed the tax and that the tax was paid by the Paper Company out of its funds turned over to the Securities Corporation for that purpose and contends that, under such conditions, the error in the name of the party assessed is immaterial; and further that the Securities Corporation, having dealt with the Bureau in its own name concerning this tax and

having, with full knowledge of the situation, paid the tax, is now estopped to question the assessment.

A number of cases have arisen on facts closely similar to those of the instant case and in practically all of them recovery had been denied. Central Aguirre Sugar Co. v. U. S., Ct.Cl., 2 F.Supp. 538; Clift & Goodrich, Inc., v. U. S., 2 Cir., 56 F.2d 751; Mahoning Investment Co. v. U. S., Ct.Cl., 3 F.Supp. 622; American Newspapers v. U. S., D.C., 20 F.Supp. 385. See, also, White v. Stone, 1 Cir., 78 F.2d 136; United States ex rel. Girard Trust Co. v. Helvering, 66 App.D.C. 64, 85 F.2d 230. An examination of these cases will show the applicability to the present case of principles there stated. There is no need to enter into a prolonged discussion of each of the cited cases. Some of them are strikingly similar in factual history to the instant case. This is particularly true of the Central Aguirre Sugar Company case.

In Mahoning Investment Co. v. U. S., supra, the Investment Company, a holding company, filed a consolidated return for itself and several subsidiaries, including the Rochester & Pittsburgh Coal & Iron Company. The return showed that the Investment Company had no taxable income and that, with the exception of trivial amounts earned by some of the lesser subsidiaries, all of the income was earned and payable by the Rochester & Pittsburgh Coal & Iron Company. A statement attached to the return showed that the taxes due were being paid by the individual companies in the consolidated group.

Later review of the return indicated the possibility of a deficiency assessment and the Investment Company was asked to furnish the usual waivers from itself and its subsidiaries, which it did. Later the Investment Company was notified of a proposed deficiency assessment in the amount of $250,889.42. The post office addresses of the Investment Company and of the Coal & Iron Company were in different cities and all correspondence was addressed to the Investment Company, though it was well understood by the latter that it was the income of the Coal & Iron Company which was the subject of the assessment. All of the consolidated companies were represented by the same attorney who, after notice of the proposed assessment, wrote the Bureau in the name of the Coal & Iron Company, referring to the proposed assessment and stating that while no notice or demand had ever been received by it, it was willing to make payment on receipt of such notice and demand. Shortly thereafter the tax was paid by the Coal & Iron Company and a receipt issued by the Collector in favor of the Investment Company.

No letter of notice of the final determination of the deficiency was ever received by the Coal & Iron Company; no notice of assessment was ever addressed to it and no demand for payment was ever made against it in its own name; nor did it receive any sixty-day letter addressed to it advising it of the deficiency and of its right to appeal to the Board of Tax Appeals. No assessment was ever made against the Coal & Iron Company in its own name. All correspondence from the Bureau was directed to the Mahoning Investment Company and notice and demand for tax was made on the Investment Company. There was no agreement that the Investment Company would pay any taxes owed by or assessed against the Coal & Iron Company.

Later the Investment Company filed its claim for refund alleging that "This tax was the tax of the Rochester & Pittsburgh Coal & Iron Company, and was not our tax. It was illegally assessed against us". It also asserted that the statute of limitations had barred collection of the tax. At the same time, the Coal & Iron Company filed claim for refund upon the same grounds, in order to protect its interest in case it should be held that it was the proper party to make the claim or to bring suit. The claims being rejected, suits were brought by both corporations.

On this set of facts, the Court, recognizing that the tax was assessed against the wrong corporation, held that the Coal & Iron Company was estopped from recovering the tax which it had paid. It said further: "We think the investment company was equally estopped with the coal company, for all the correspondence on the part of the defendant was carried on through that company. But it is not necessary to make such a holding in order to deny it recovery *for it paid nothing upon the tax and never treated the assessment as having been made against itself but as against the coal company.* The duly authorized attorney for both companies received the letters addressed to the investment company, and the coal company was controlled by the parent corporation." (Italics supplied).

The above comment as to the source by which the tax was paid is particularly applicable to the present case. The only difference is that in the cited case the check in payment of tax was sent by the bankers of the Coal & Iron Company at its direction, while here the Paper Company drew its check payable to the Securities Corporation and the latter endorsed it over to the Collector. In both instances, the tax was paid by the concern whose operations were the subject of the tax and which was intended to be assessed.

American Newspapers v. U. S., D.C., 20 F.Supp. 385, 391, was another case in which an assessment was made against a parent corporation for taxes properly chargeable against subsidiaries. After the time when a corrected assessment might have been made, suit was brought to recover. In denying recovery, the Court said, in part:

"The statute of limitations for the reassessment of the tax having expired, a recovery by the plaintiff will result in the loss by the government of the tax properly payable by the subsidiaries, on the technical ground that the assessment of the deficiency on the consolidated income was not apportioned among the affiliated corporations.

"The law does not require such a result. On the contrary it was held that, where the tax was actually due and owing by the parties who paid it, it may not be recovered back on the ground that the assessment was not properly made and that the time for recomputation has expired.

*    *    *    *    *    *

"Furthermore, an action such as this is one to recover for money had and received, which is governed by equitable principles. In order to recover in such an action, the burden is on the plaintiff to establish that the defendant holds money which in equity and good conscience it is not entitled to retain as against the plaintiff. Therefore, where it appears that a proper recomputation of the tax would show that plaintiff has paid no more than was justly due and owing, he cannot recover the tax paid on the ground that the assessment was not properly made." Citing cases.

At the trial counsel for the plaintiff objected earnestly to any suggestion that it was to be taken as established that the Paper Company owed the amount of the tax assessed or that the assessment was evidence of the correctness of the tax. It contended that the only question for discussion was whether the Securities Corporation owed or had agreed to pay the tax, and that the possible liability of the Paper Company is immaterial. It contends that there is no proof that the Paper Company owed any part of this tax and it asserts that it did not, in fact, owe it; that the computation is erroneous. I understand the contention to be that the Paper Company has never been assessed with any tax and has had no opportunity to contest the correctness of the tax. On these grounds, it may be urged that the present case is to be distinguished from cases hereinbefore cited.

But the contention has its basis in technicality rather than realism. Everyone connected with this transaction knew throughout that any potential deficiency was directed at the operations of the Paper Company only; admittedly the Securities Corporation owed no tax. All negotiations, through the years while the matter was pending, related to the income of the Paper Company only. When a special assessment was requested and granted, it was the income and invested capital of the Paper Company only that were considered. After protracted negotiations, in the course of which the Bureau several times amended its figures as to the proposed deficiency, a final notice of a proposed assessment was sent on March 27, 1928, clearly showing that the liability was upon the Paper Company only. The statement sent as part of the notice and showing the computation of the tax specifically states in its opening lines,

| Company | Year | Deficiency |
|---|---|---|
| Hammermill Paper Company | 1918 | $73,224.51. |

This notice and statement was received by the officers of the Paper Company but no appeal was taken. Later, through the inadvertence heretofore referred to and to which the Paper Company had contributed through its correspondence and conduct, the assessment was entered in the name of the Securities Corporation. And the Paper Company, refraining from calling attention to the error, paid the tax from its own funds.

To say that no assessment was ever made against the Paper Company may be technically true, but to say that no opportunity was afforded it to contest the tax is clearly not correct. Ordinarily when an assessment is made, the only evidence of its

correctness is the assessment and the statement showing how the tax was computed. That either of the affiliated corporations had any serious desire to contest this assessment further is hardly credible. It is to be remembered that the net income and invested capital to be used in computation of the tax had been agreed on as correct and when computation of the tax had been made on this agreed basis, there was little more that the taxpayer could do. Certainly the finding of the Commissioner was prima facie correct.

If either of these affiliated corporations had desired further to contest the tax, they could easily have done so. In view of the indiscriminate use of names throughout the proceedings, there is little doubt that the Board of Tax Appeals would have entertained an appeal on the merits if taken in the name of either corporation; certainly if taken by both. Or, a mere letter to the Bureau suggesting that the assessment should be made in the name of the Paper Company would have been followed by a correction which would have unquestionably given the Paper Company the right to take an appeal in its name. The inescapable conclusion is that the taxpayer recognized the validity of the tax or felt that further contest was useless and decided to pay the tax and end the matter; and that the technical claim now asserted was an afterthought of several years later. Either this, or we must believe that the taxpayer, realizing the possible effect of the error in entering the assessment, kept quiet about it with the deliberate purpose of waiting to make claim for refund until such time as a corrected assessment was impossible. I am loath to believe the latter alternative. In any event, the payment of the tax and the delay in filing claim for refund argue strongly against any desire by the taxpayer to contest the tax on its merits.

The plaintiff in this case has long since gone out of existence except for the ghostly survival permitted by statute for the purpose of suing or being sued. The Paper Company is the real party in interest and if this money were recovered, it would be for the benefit of the Paper Company— the company whose operations were the subject of the tax; and this company would be recovering the very tax which, with abundant opportunity, it had refused to contest at the time of its assessment, and would be doing so under conditions which

render the Government helpless to make defense.

In the cases examined similar to this the courts, in denying recovery, have invoked at times the doctrine of estoppel, at times that of equitable set-off, dependent on the status of the plaintiff and the facts of the particular case. American Newspapers v. U. S., supra; White v. Stone, supra. It hardly seems necessary to go into a technical discussion of the particular application of any of these doctrines. The cases are agreed that an action to recover taxes alleged to have been illegally collected is essentially an action for money had and received and is equitable in character. And that in order to recover in such an action, the plaintiff must establish that the defendant holds money which in equity and good conscience it is not entitled to retain. American Newspapers v. U. S., supra; United States ex rel. Girard Trust Co. v. Helvering, supra; Champ Spring Co. v. U. S., 8 Cir., 47 F.2d 1; Duffin v. Lucas, 6 Cir., 55 F.2d 786; Hartwell Mills v. Rose, 5 Cir., 61 F.2d 441.

The simple facts in this case are that a deficiency in taxes was asserted against the Paper Company. The net income and invested capital of the Paper Company only were taken as the basis for computation of the tax, and this was with the knowledge and agreement of the Paper Company. Notice of the proposed assessment was transmitted to and received by the Paper Company through, or in the name of, the Securities Corporation. The Paper Company with full opportunity to appeal did not do so, but, after an assessment had been made, paid the tax from its funds transmitting the same to the Collector through the Securities Corporation. The assessment was in reality made against the Paper Company, in the sense that it was directed at the Paper Company. It was entered in the name of the Securities Corporation erroneously.

Under these circumstances, the Securities Corporation did not have to pay the tax. It did not owe it and it owned no assets from which it could be collected. Even if it could be said that the tax was paid by the Securities Corporation merely because it transmitted through endorsement the check drawn by the Paper Company, then such payment was for a tax which it knew that it did not owe and which could not be collected from it; the

payment was voluntary and not under compulsion. It would have no standing to recover a tax so paid. Ohio Locomotive Crane Co. v. Denman, 6 Cir., 73 F.2d 408.

Actually the tax was not paid by the Securities Corporation. The Paper Company, recognizing that the claim was asserted against it and without waiting for a corrected assessment to be made or for any assessment to be entered in its name, paid the amount of the tax. Neither was the Paper Company under duress at the time, as no assessment had been entered against it. Taxes may be paid without an assessment being made and the fact that no assessment was made does not in itself entitle the taxpayer to recover. He must show that the government is withholding money which in equity and good conscience it ought not to retain.

The two corporations involved in this case are as near one as it is possible for two corporations to be. The real party in interest and the real taxpayer is the Paper Company. While it remains in the background, outside the arena of controversy, it is plain that any recovery would be for its benefit. Having paid this tax without compulsion and with full opportunity to contest it before payment, it seeks to recover it on grounds of a technical nature only and without showing that the Government has collected any sum which was not due it. I do not think that this result should be permitted, and the petition will be dismissed.